# Dr. J. F. MANGER *vs.* THE BOARD OF STATE MEDICAL EXAMINERS, &c.

*Physicians and Surgeons—Right of Practitioner to be Registered by the Board of Medical Examiners—Statutory Construction—Changing Punctuation—Mandamus to Compel Exercise of Authority to Act—Appeal in Mandamus Cases—Instructions.*

A person who practiced medicine as a profession prior to June 1st, 1892, and who continued to practice till the passage of the Act of 1894, ch. 217, is entitled to be registered as a physician under the Act of 1896, ch. 194, although he had not registered under the Act of 1894 and although he does not have a diploma from a medical college.

A section of a statute as printed contained two sentences separated by a period, but the latter by itself was unintelligible. *Held*, that in construing the statute, the period will be changed to a comma, and the capital letter beginning the last sentence as printed changed to a small letter, since thereby some meaning is given to the last clause of the section and the whole is made to harmonize with the general scheme of the legislation of which it forms a part.

Neither bad grammar nor inaccurate punctuation can alter the obvious sense of a statute.

Under the Act of 1896, ch. 194, a person who had been engaged in the practice of medicine as a profession prior to June 1st, 1892, and continuously thereafter, is entitled to be registered as an authorized physician, provided the president of the Board of Medical Examiners is satisfied of that fact. Petitioner's application to be registered as such a practitioner was rejected by the board because he held no diploma from a medical college. *Held*, that since possession of a diploma by the petitioner is not necessary under the statute he is entitled to a writ of *mandamus* compelling the board to decide on the truth of the averments contained in his application.

An officer vested with power to act may be compelled by *mandamus* to exercise that power although his honest discretion in the exercise of it cannot be controlled.

When a prayer as offered is modified by the Court, it will be treated on appeal as having been presented in the form in which it was granted, unless the bill of exceptions shows that the party offering it excepted to its rejection as offered and to its modification by the Court.

Upon appeal from an order granting or refusing a *mandamus*, when the issues of fact have been determined by the Judge below without

the aid of a jury, the Appellate Court is not confined to a review of the rulings on questions of law presented by exceptions, but in such cases the inquiry will be whether the writ was properly granted or properly refused after an inspection of the whole record.

Appeal from an order of the Court of Common Pleas, (DENNIS, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Howard Bryant*, for the appellant.

The Court below found from the evidence, that the appellant, Dr. Manger, had been engaged in the practice of medicine as a profession, and as a means of livelihood in the City of Baltimore, since the year 1880, and consequently long prior to June 1, 1892. Now, section 62 of the Act of 1896 is what has given rise to this appeal. The learned Judge below contending that as this section reads and is printed in the Act, he could not give any force or effect to the last sentence of the section, because it does not mean anything, and in its present form is incapable of interpretation, and that he was concluded by the first sentence of the section, and as the doctor was not registered, the Court was constrained to find upon the law against the appellant.

It is contended by the appellant that the last sentence of the 62nd section if properly allowed to follow the first sentence with proper punctuation, will have some meaning and will express the will of the Legislature, and therefore the section should be so read, and not as printed.

As a general rule punctuation has no effect on the interpretation of deeds, *statutes* or any legal writing whatever. The reason is not far to seek, as was said by LORD KENYON in *Doe* v. *Martin*, 4 T. R. 65. "We know that no stops are inserted in Acts of Parliament or in deeds ; but the Courts of law in construing them, must read them with such stops as will give effect to the whole." To the

same effect is the case of *Barrow* v. *Wadkin*, 24 Beav. 327. Mr. Barrington informs us in his observation on statutes, (5 Ed. 438, note x), that the full point was not known till the time of Dante, and suggests that the better way of printing statutes, would be without the use of stops, a suggestion which would certainly prevent the raising of any question on the punctuation, and save the Courts the trouble of repeating the rule.

There are a number of decisions in this country, all of which decide, that punctuation is no part of a statute, and should not be considered in construing it. In *Pancoast* v. *Ruffin*, 1 Ohio, 178, the Court says ; "Statutes should be so construed as to give effect to the intention of the Legislature, and render every section and *clause* effectually operative ; punctuation in a statute book may be incorrect and ought never to vary the true sense." *Price* v. *Price*, 10 Ohio St. 316; *Hamilton* v. *Steamboat Hamilton*, 16 Ohio St. 428. *Allen* v. *Russell*, 39 Ohio St. 336, says : The Court will repunctuate if necessary to render the meaning clear. *Albright* v. *Payne*, 43 Ohio St. 8; *U. S.* v. *The R. R. Co's*, 5 Abb. U. S. 196. In *Randolph* v. *Bague*, 44 Cal. 366, we find that "the Courts will not permit an erroneous punctuation of a statute, in printing it, to have the effect of giving it an absurd construction." In *Gygers' Estate*, 65 Pa. St. 311, Judge Sharswood says : "There is no punctuation in a statute which ought to rule." *Morril* v. *State*, 38 Wis. 428; *Coston* v. *Brock*, 14 S. C. 104. In *Archer* v. *Ellison*, 28 S. C. 245, the Court says : "It has been held as settled law by the highest authority, that punctuation is no part of a statute and should not have a controlling influence." In case of *Matter of Olmsted*, 17 Abb. N. Cases, 320, we find that the rule in construing a statute, punctuation will be disregarded, if needful, to ascertain its meaning applied, and a statute construed as if a comma were substituted for a semicolon. *Cushing and another* v. *Womick*, 9 Gray 382; *Martin* v. *Gleason*, 139 Mass. 187. In case of *Hammock* v. *Loan and Trust Co.*, 105 U. S.

84, Justice Harlan says: "Courts will, however, in the construction of statutes, for the purpose of arriving at the real meaning and intention of the law-makers, disregard the punctuation, *or repunctuate*, if need be, to render the true meaning of the statute." The above we submit are ample authorities and settle the law in reference to this proposition as contended for by the appellant. In reference to the construction of a clause in a will with reference to punctuation, this Court has decided in *Weatherby* v. *Mister*, 39 Md. 620, that punctuation will not be allowed to confuse a construction otherwise clear, or to make an ambiguity. See *Olivet* v. *Whitworth*, 82 Md. 277 ; *Black* v. *Herring*, 79 Md. 149.

*John Peirce Bruns* (with whom were *Isidor Rayner, Attorney-General,* and *Archibald H. Taylor* on the brief ), for the appellee.

The president of the board, the appellee here, was not "satisfied" that the appellant was a duly qualified lawful practitioner of medicine, actually engaged in the practice of such profession in said State on or before June 1, 1892, and so decided. The appellant does not dare to say that this decision was in any sense fraudulent or corrupt, and is therefore not entitled to his *mandamus*, and his petition was properly dismissed by the Court. *Shober* v. *Cochrane*, 53 Md. 544–9 ; *Miles* v. *Bradford*, 22 Md. 181–5; *Green* v. *Purnell*, 12 Md. 329. Clearly the duty imposed by this Act upon the president of the board is one whereby, in the words of the United States Supreme Court, "he was obliged * * * to examine evidence and form his judgment before he acted ; and, whenever that is to be done, it is not a case for a *mandamus*." *U. S.* v. *Seaman*, 17 How. 225–31.

Section 54, in Act. 1894, contemplated plainly that all physicians who were such, legally practising before June 1, 1892, and desired so to continue practice should comply with the law of 1894 and register themselves prior to July 1st, 1894, as the law enjoined upon them. This appellant, therefore, not only had the opportunity to register and thus

obtain the protection of that Act, but it was incumbent upon him to do so, as an act of good faith due the community, his profession and the law. He announces defiantly that he did not then register through "neglect." But had not the president of the board and the Court below the right to say, that this admission illustrated a fatal lack of good faith in his claim to be a practitioner at the date, 1894, or to have been such in 1892, and prior thereto?

If section 62 of the Act of 1896, upon which the appellant's sole hope rests, is unintelligible, we must leave it out of consideration, and enforce the remainder of the law, as to which there is no difficulty of construction. Or, if one part of this section is intelligible, we must regard only that part, and one part is clearly intelligible. That part is to the effect, that if at the time he claimed practice, he had pursued it as "a profession or means of livelihood, being one duly licensed or registered," it would have been such practice as would entitle him now to the "permit" to be registered without examination. The remainder of the section may suggest other qualifications, which, together with the aforenamed, or without them, might be sufficient, such as the possession of a diploma verified, or having been ten years in continuous practice as a graduated physician prior to 1888. (Code, Article 43, section 40). But no one in his senses, could by any twist construe these unintelligible words to state, that the acts of a half-fledged medical student, or the surreptitious prescribing of a drug store clerk or keeper, constituted the practising of a qualified physician. When we consider the clear object of the Act, even if the unintelligible part seemed to say so, it would certainly not be so construed by the informed mind of a Court.

There is one consideration that seems decisive of this particular appeal. The appellant himself offered a prayer, his first, which was granted by the Court, and to the law laid down by it he, of course, cannot thereafter object. This instruction is as follows : " The Court rules that it finds from the evidence in the case that the petitioner was actively en-

gaged in the practice of medicine as a profession, in the city of Baltimore, prior to the year 1888, and the 1st of June 1892, but was never duly licensed or registered, and therefore is not entitled to the remedy asked for."

Even if this prayer does lay down the law that is too severe upon the appellant, he himself has thus agreed that it shall be the law of this case. *Golder* v. *Muller et al.*, 22 Ill. 527; *Phillips* v. *The Wisconsin, etc., Society*, 60 Wis. 401–5–6; *Harrison* v. *Company*, 65 Cal. 376–7; *Flowers* v. *Helm*, 29 Mo. 324–5; *Swayer* v. *Manhattan R. R. Co.*, 115 N. Y. Supp. 222–3. When, therefore, he came to offer his second prayer, he was precluded from offering anything inconsistent with the instruction he had already asked and received, whether such second prayer contained the true exposition or not." *Clark* v. *Pearson*, 53 Ill. App. 310–14. This prayer is moreover defective, of course, upon the whole case as above set out. For leaving out the question as to whether a license or registration was required by law prior to 1888, the evidence certainly establishes the reverse of this prayer, viz., that the petitioner was *not* a duly qualified lawful practitioner of medicine prior to the year 1888.

McSHERRY, C. J., delivered the opinion of the Court.

This is an application for a *mandamus* to compel the State Board of Medical Examiners to issue to the appellant a permit or certificate authorizing him to be registered as a practitioner of medicine. The Court of Common Pleas ruled against the application, and from the order refusing the writ this appeal was taken. If the appellant was entitled, under the terms of the statute, to the permit or certificate which he demanded, the writ should have been granted. If, on the other hand, he was not so entitled, or if the Board of Medical Examiners or its president, is clothed with a lawful discretion to issue or to withhold the permit, then the writ was properly refused. So the inquiry comes to this : Was the board or the president of the board, bound under the law to issue the permit on the facts

alleged and proved ? There is a subordinate question aris-
ing on the prayers, and that will be disposed of later on.

There has been considerable legislation in Maryland de-
signed to regulate the practice of medicine. The authority
of the General Assembly to enact it in the exercise of the
police power cannot be disputed or denied. That proposi-
tion need not be discussed just now because it will be fully
considered in another case argued at this term. The diffi-
culties which confront us in the interpretation of these
statutes grow, in a large measure, out of the numerous and
successive modifications and changes made in these enact-
ments, and out of an evident want of care in their prepara-
tion in the first instance. Indeed, a well defined system
seems to have been lacking at the beginning, and subse-
quent amendments and additions appear to have been sug-
gested by original imperfections, and to have been devised
to overcome unforseen emergencies. Beginning with the
*Act of 1888*, ch. 429, the qualifications of persons to
practice medicine were defined. By the first section of that
Act it was provided that a graduate of medicine holding a
diploma issued by a reputable medical college was entitled
to a certificate from the State Board of Health ; and that
certificate was made conclusive of the right of its holder to
practice. By section three any person not a graduate but
then actually practicing medicine, was permitted to apply
to the State Board of Health for examination, and if found
competent the board was empowered to issue to him a cer-
tificate which gave him the right to practice. A proviso to
section one expressly declared that the Act should not
apply to any person who had been practicing medicine con-
tinuously within this State for ten years before the passage
of the Act. There were, therefore, three classes of persons
contemplated by and included in the *Act of 1888*, viz.,
those who had diplomas ; those who had not ; and those
who had been in actual continuous practice for ten years.
Persons who had diplomas but had not been practicing for
ten years were entitled to certificates upon presentation of

their diplomas.   Persons who had no diplomas and had not practiced ten years were required to be examined ; and persons who had practiced ten years were not within the Act whether they had diplomas or not.   Section one of the *Act of 1888*, codified as *Sec. 39, Art. 43*, of the Code was repealed and a substitute was enacted in its stead by the *Act of 1892*, ch. 296.   This substituted thirty-ninth section declared that " every person not now practicing medicine and surgery who shall hereafter begin to practice medicine and surgery  *  *  *  *  *   shall possess the qualifications required by this Act." Then follow sections defining these qualifications and creating two Boards of Medical Examiners which took the place of the State Board of Health.   The forty-third section shows that the *Act of 1892* was intended to apply to persons *commencing* the practice of medicine *after* the passage of that Act.   Persons practicing *before* its adoption were not included within its terms and were not required to undergo an examination or to procure a license from either of the Boards of Medical Examiners.   After this came the *Act of 1894*, ch. 217, which, without repealing *Sec. 39* as enacted by the *Act of 1892*, declared that " from and after the first day of July, 1894 no person shall practice medicine or surgery in the State of Maryland unless he or she shall be duly registered as a physician or surgeon, in accordance with the provisions of this Act." By *sec. 54* every person who was practicing medicine prior to June the first, eighteen hundred and ninety-two, was entitled to register as a physician by appearing before the Clerk of the Circuit Court and filing an application verified by oath ; and by *sec. 55* all persons who commenced to practice after June the first, eighteen hundred and ninety-two were declared not entitled to register unless. they filed with the Clerk of the Circuit Court a license issued by one or the other of the two Boards of Medical Examiners.   The *Act of 1896*, ch. 194 repealed *sec. 54*, and in lieu of the privilege which every person who had been practicing prior to June the first, 1892 possessed

to register simply upon application to the clerk of the Circuit Court, substituted a requirement that all such persons " shall be entitled to be registered " upon making application to one of the two Boards of Medical Examiners, provided the president of the board applied to should be satisfied "that the applicant was a duly qualified lawful practitioner of medicine in good standing, actually engaged in the practice of such profession in said State, on or before said first day of June, 1892 ; " and the proviso to the same section declared that the Act should not be applicable to persons who had practised medicine prior to June the first, 1892, *and* who had registered prior to July, 1894. Section sixty-two defines or attempts to define the meaning of the terms " practicing medicine " and " practitioner of medicine," and is in these words : " The term ' practicing medicine or a practitioner of medicine,' when used with respect to the qualifications of a practitioner or applicant to be registered under this article, shall be construed to mean, the ' practice of medicine ' as a profession or means of livelihood, and by one duly licensed or registered. If a license or register by law at the time when such practice is alleged or claimed, or by one otherwise duly qualified to practice medicine, if other qualifications were required by law at such date." This is the section which causes the trouble in the pending case. What does it mean ?

If we bear in mind that the whole scheme devised by the *Act of 1888* was swept away by the *Act of 1892*, and that the latter Act was specifically made applicable to persons *not then* practicing medicine but who should *thereafter begin* to practice, as *secs. 39 and 43 of Art. 43 of the Code* make manifest ; and if we remember that these very sections of the Act of 1892 are still on the statute-book and still in full force ; it becomes obvious that *sec. 62*, added by the *Act of 1896*, cannot be construed in a way to make it antagonize these antecedent provisions, if any other reasonable interpretation can be placed upon it. It is a rule of very general application that statutes should be read so as to harmonize

their various provisions and so as to give effect to all their parts, if that be possible, rather than in a way to defeat or nullify any portion of them.   Laying out of view the repealed scheme of 1888, the first provision requiring a person who had practiced medicine prior to June the first, 1892, to procure a license from the Board of Examiners, was in the *Act of 1896.*   That provision does not supersede *secs. 39 and 43* as enacted by the *Act of 1892.*   Under the *Act of 1896* a person who had practiced prior to June the first, 1892, in a way that the term " practicing medicine " is defined or attempted to be defined in *sec. 62*—transcribed above—was entitled to a license, if he satisfied the president of the Board of Examiners that he had been engaged in practice as a means of livelihood prior to June the first, 1892. The difficulty presented by sec. 62 arises out of its punctuation.   As printed, the section contains two sentences.   The second sentence, separated by a period from the first, is utterly unintelligible.   Obviously it was not intended to read as it does read.  The period after the word "registered" and the capital letter I following, break into two sentences what was evidently designed to be but one sentence.  If the period be changed to a comma, and the capital *I* to a small *i*, some meaning is given to the last clause of the section and the whole section is made to harmonize with the general scheme of the legislation of which it forms a part.   Can such a change be made ?

Neither bad grammar nor inaccurate punctuation can alter the obvious sense of a legislative enactment.   This is necessarily so.  The statutes in England are not punctuated in the original rolls ;  but more or less marks of punctuation appear in them as printed by authority.  With us, the punctuation is the work of the draftsman, the engrossers or the printer.   In the legislative body, the bill is *read ;* so that the ear, not the eye, takes cognizance of it.   Therefore, the punctuation is not, in either country, of controlling effect in the interpretation.  *Bishop on Written Laws*, sec. 78.   In *Ewing* v. *Burnett,* 11 Pet. 54, the Supreme Court observed:

"Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail." Cited and followed, *in re Irwine*, 13 Fed. Cas. 130, where a section of the bankrupt law was construed in accordance with the meaning of the words used. In *Kinkele* v. *Wilson*, 151 N. Y. 277, where the punctuation accorded with common sense, the use of a capital letter in the middle of a sentence was regarded as accidental. See *Notes to U. S. Rep.*, vol. 3, p. 643. In the case of *in re Denny's Estate*, 8 Ir. Rep. Eq. 427, CHRISTIAN, L. J., after inserting punctuation marks of his own in a deed which he was construing, said: "It would be no answer to this to say that the deed contains no such punctuation or supposed pauses as I have used; it is perfectly legitimate to assume them as a means of showing what construction the words are *capable* of; and in doing so, I am only following what was done by the judges in one of the cases cited (*Galley* v. *Barrington*, 2 Bing. 387); and if by such aid we are enabled to see that the language can bear an interpretation which will make the whole instrument rational and self-consistent, we are bound to adopt that interpretation in preference to another which would attribute to the parties an intention utterly capricious, insensible and absurd." And in *Weatherly* v. *Mister*, 39 Md. 629, this Court said: "Punctuation may perhaps be resorted to when no other means can be found of solving an ambiguity, but not in cases where no real ambiguity exists, except what the punctuation itself creates. In such cases it will not be allowed to confuse a construction otherwise clear." The Supreme Court of Pennsylvania said in *White* v. *Smith*, 33 Pa. St. 186, "Punctuation may aid in ascertaining the true reading of a production, but the production may be read and interpreted without such aid." See *Olivet* v. *Whitworth*, 82 Md. 277; *Black* v. *Herring*, 79 Md. 149; *Doe* v. *Martin*, 4 T. Rep. 65. "Punctuation is no part of the statute." *Hammock* v. *Farmers' L. & T. Co.*, 105 U. S. 77.

In the light of these principles it is competent to drop the

period which erroneously divides *sec. 62* into two sentences, and to convert the capital *I* into a small *i;* and if this be done it is reasonably clear that the true reading of the section is this : that the term "practicing medicine" when used in *sec. 54* (as amended by the *Act of 1896*), with respect to the qualifications of a practitioner to be registered, means the practice of medicine as a profession or a means of a livelihood by one duly licensed or registered, "*if* a license or register by law at the time when such practice is alleged or claimed  *  *  *  *  *  were required by law at such date." If then the appellant had been a practicing physician prior to June the first, 1892, that is to say, if he had been prior to that date, practicing medicine as a profession or means of livelihood ; and if after June the first, 1892, he continued to so practice up till the passage of the *Act of 1894*, he was entitled to be registered under the *Act of 1896*, notwithstanding he had not registered under the *Act of 1894*, because he had been, on this assumption of facts, a practitioner prior to June the first, 1892, and also between June, 1892, and the adoption of the *Act of 1894*, during which last-named period no license was required to be taken out by one so situated.   He was, therefore, on this hypothesis of fact, a practitioner, during a time when no license was required by law ; and he thus came within the definition given in *sec. 62* when that section is read in the way which, according to the authorities cited, it is competent to read it. If the president of the Board of Examiners was satisfied that the applicant was in reality practicing prior to June the first, 1892, and that he continued to practice thereafter, then it became the duty of the board to grant a permit authorizing the appellant to register.   Now, what are the facts as to the appellants' having practiced ; and what is the ground upon which the refusal to grant the permit was founded ?

Without giving an analysis of the evidence it suffices to say that we are quite satisfied after a careful examination of it that the appellant was in fact engaged in the actual practice of medicine for some years prior to June the first, 1892.

He began to practice about 1882.   Under the Act of 1888, as he had no diploma, he ought to have undergone an examination by the Board of Health, but he did not.   Though he made himself liable to be proceeded against for neglecting to comply with the requirements of that Act, he was, none the less, engaged in actual practice as a means of livelihood, and this was his condition or situation at the time the *Act of 1892* was adopted ; and a status or condition of actual practice was the status or condition with which that Act dealt.   The *Act of 1892*, as we have said, changed the whole antecedent scheme.   It applied to a situation actually existing at its date.   It did not undertake to discriminate between those who were then lawfully, and those who were then unlawfully practicing medicine.   It confined its operations to persons who should *after* its passage *begin* the practice of medicine ; and having repealed the *Act of 1888*, it left no statute in force to apply to those persons who were, in fact, practicing prior to June the first, 1892, no matter how or under what circumstances they had practiced.   As a result, then, the appellant was not within the terms of the *Act of 1892*, in so far forth as those terms related to registration.   He was a practicing physician, and by the terms of the *Act of 1892*, was under no obligation to register. Under *sec. 54* of the *Act of 1896*, interpreted by *sec. 62* as we have construed the latter, he was entitled to register, and if entitled to register he was entitled to the permit authorizing him to register ; unless his application was rejected by the president of the Board of Medical Examiners in the honest exercise of a discretion conferred upon him by the statute.   But we are informed by the record that the appellant's application was rejected, not in the exercise of any discretion vested in the board or its president, but solely because the appellant had no diploma from a medical college.   That was not a valid reason for rejecting it.   The exercise of a discretion, though erroneously, if not corruptly exercised, cannot be reviewed in a petition for a *mandamus ;* but an officer clothed with a power to act may be compelled by

*mandamus* to exercise that power, though his honest discretion in the exercise of it cannot be controlled.

As the appellant was undoubtedly engaged in the practice of medicine when the *Act of 1892* was passed, and was then a practitioner of medicine within the definition of that term as contained in *secs. 54 and 62* of the *Act of 1896;* and as his application for a permit to be registered was rejected upon the untenable ground that he had no diploma, and as it was not rejected in the exercise of any discretion reposed in the president of the Board of Examiners ; it follows that he was entitled to a writ of *mandamus* compelling the board, or its president, to examine and decide on the truth of the averments contained in that application, unless the instruction which he asked the trial Court to grant and which the Court did grant, stands in the way of the relief which he seeks. That instruction is in these words :  " The Court rules that it finds from the evidence in the case that the petitioner was actually engaged in the practice of medicine as a profession in the City of Baltimore prior to the year 1888, and the first of June, 1892, *but was never duly licensed or registered, and therefore is not entitled to the remedy asked for.*"  We were told in the argument that the concluding words which we have put in italics and which deny the right to the writ, were added by the learned Judge below ; and since the argument we have been furnished the original instruction and it bears out the counsel's statement.  But we are, of course, confined to the record as it was transmitted to this Court, and we cannot look at the original papers.  In an ordinary case such an instruction would be fatal to the party presenting it, because it would have been binding on him, unless when modified by the Court he had excepted to the modification.  This was not done.  A litigant is entitled to have the prayers which he offers passed on as they are offered. If they are rejected he may take his exception.  If modified he should except to their rejection as offered and also to the modification of them ; and it must appear on the

face of the bill of exceptions that he has done so.   Unless
the bill of exceptions does show that the prayer as granted
had been modified by the Court and that it was not the
prayer which was submitted, we must treat it as having
been presented in the form in which we find it set forth in
the record.   But in an appeal from an order granting or
refusing a *mandamus*, when the issues of fact have been de-
termined by the Judge below without the aid of a jury, we
are not, as in ordinary appeals from a Court of law, con-
fined to a review of the rulings on questions of law pre-
sented by exceptions.   In such instances the Appellate
Court must inquire whether the writ was properly granted
or properly refused, after an inspection of the whole record,
and is not restricted to an instruction or limited to de-
termining whether that instruction was right or wrong ;
particularly as no instruction is needed as a basis to bring
up for revision the final order when the case is heard below
without the intervention of a jury.   It is the final order
granting or refusing a *mandamus* which an appeal to this
Court assails, when the case has been tried by the Judge
alone ; and whatever the instructions may be, if there are any,
the accuracy or inaccuracy of that order is the thing to be
determined.   Without regard, then, to the various prayers
the ultimate question is, was the order refusing to grant
the writ right?   From what we have said it is apparent
there was error in refusing to issue a *mandamus* requiring
the Board of Medical Examiners to grant the appellant the
permit he asked, if the president of the board should be
satisfied of the truth of the statements contained in the ap-
plication.

There is nothing to indicate that the president of the
board has ever examined into the averments of the appel-
lant's application, or that he has decided and determined
that he was not satisfied with the truth of those averments.
The evidence in the record is quite ample, we should say,
to show that they are true ; but in saying this we are not
to be understood as asserting a right, in the absence of a

charge of fraud or corruption, to review the conclusion of an officer to whom the statute has committed the discretion and the authority to decide that question. Under our interpretation of the law and according to our view of the facts the appellant was entitled to a permit. If no other reason exists for withholding it than because he has no diploma, then it should not be withheld ; but it is for the president of the Board of Examiners, and not for us, as the case is now presented, to pass on the facts alleged in the application. As he has not done this, the appellant is entitled to a *mandamus* requiring the president to make such an investigation.

For the reasons we have assigned, the order dismissing the petition will be reversed and the cause will be remanded for such further proceedings, in accord with the views expressed in this opinion, as may be deemed desirable.

> *Order reversed with costs above and*
> *below and cause remanded for*
> *further proceedings.*