## MICAJAH W. POPE et al. *vs.* WILLIAM WHITRIDGE et al.

*Mandamus—Construction of Act of 1908, Ch. 77, Relating to Society for the Prevention of Cruelty to Animals—What Persons Entitled to Vote at the Election Provided for by the Act—Payment or Tender of Dues—Place of Payment—Proxies—Revocation of Proxy —Parties to Mandamus Proceeding— Amendment of Prayer of Writ— Remanding Cause.*

When a mandamus proceeding is tried before the Court without a jury, formal bills of exceptions are not necessary, and on an appeal this Court determines from the whole record whether the writ should be issued or not. But it is necessary that there be either written objections filed or proper notations made in the record clearly indicating the rulings excepted to on both sides and the ground of such exception, so that the rulings may be distinctly presented to this Court.

The Act of 1908, Ch. 77, relating to the Maryland Society for the Prevention of Cruelty to Animals, provided that a special election of directors of the society should be held on April 10, 1908, at which twelve directors should be chosen, four to serve for one year, four for two years and four for three years. After the election a petition for a mandamus was filed, alleging that certain ballots were illegally counted for the directors then declared to be elected, and certain other ballots offered for the petitioners were illegally rejected, and that the petitioners were duly elected as directors. The prayer of the petition was for a mandamus ordering the induction and installation of the petitioners into office as directors. *Held,* that under the provisions of the Act new members elected after February 13 and before March 7, 1908, who paid their dues between March 7 and April 10, were entitled to vote.

That members who were such before February 13th and who had not resigned and whose dues for 1907 or 1908 were paid prior to the beginning of the election on April 10th, were entitled to vote.

That members contributing annually less than $5 were entitled to vote at said election.

A sum of money was handed by the cashier of a bank to the treasurer of said society as the total amount of dues of a number of persons whose names were on a list then given to the treasurer, with the understanding that the dues of such of those persons as might be allowed to vote at the approaching election should be taken out of that sum. The treasurer took the money, but immediately handed it back to the cashier and it was not put to the treasurer's credit in the bank, either individually or as treasurer of the society. *Held,* that this transaction did not constitute a payment of the dues of those persons, because there had been no acceptance of any specific sum by the treasurer, and also that it was not a good tender of dues, because the offer was not absolute, but was made to depend on a contingency that could not happen until after the election, and that consequently those persons whose dues were so tendered were not entitled to vote at the election.

Where the books of a society were kept at its office and it had been customary for a long time for members to pay their dues to the person in charge of that office, a tender of dues to that person is valid, although the president of the society, for no apparent reason, had ordered, shortly before the tender, that dues should thereafter be paid only to the treasurer of the society at his private place of business.

Under the said Act of 1908, a member of the society who had not resigned, but had failed to pay his annual dues and who was still carried on the books of the society as a member, was qualified to vote at the special election, provided his dues were paid or lawfully tendered for the year 1907 or the year 1908.

When a member of the society gave proxies to cast his vote at the election for directors to different persons, the proxy last given is to be deemed the revocation of all former proxies, but

where two such proxies with the ballots thereto attached were presented to the judges of election, one for each side, and it could not be determined from an inspection of the proxies themselves which of the two was the last given by such member, neither of the ballots attached to such proxies should be counted.

If the revocation of a proxy to vote was duly presented to the judges of election, or was in the hands of a person holding the proxy or known to him, the ballot attached to the proxy should not be counted.

A proxy to which no ballot is attached should not be counted as a vote. But when in the same envelope two proxies are found and two ballots, not attached to the proxies, the ballots should be appropriated to them.

Persons who made donations for specific purposes to the said society, but not for the purpose of becoming members, and who were not carried on the books as members, are not entitled to vote.

When the membership book of a society bears on it notations made by the bookkeeper that certain persons had resigned or refused to pay, the presumption is that such notations were made by the authority of the board and that such persons are not members.

Under said Act of 1908, Ch. 77, honorary members of the society were entitled to vote at the special election thereby directed to be held.

Certain questions of fact relating to the right of parties to vote at the election for directors as dependent upon whether their dues had been paid, or whether their ballots were actually tendered, as decided by the trial Court in the mandamus proceeding, are affirmed on appeal.

In a petition for a mandamus by persons claiming to have been elected directors of a society it is not necessary that all the persons so elected should be made parties to the petition.

Under the Act of 1908, Ch. 77, twelve directors of the society were to be elected in April, 1908, and they were required to decide before the next annual meeting which of their number should serve for the respective terms of one, two and three years. A petition for a mandamus alleged that the twelve

persons returned as elected were not legally elected, and that other twelve persons were duly elected. The petition asked for an order directing induction into office of these twelve persons. More than a year after the election it is established on appeal that the petitioners were duly elected. *Held,* that although the writ cannot be granted as prayed for so as to place in office all these twelve persons, yet a writ would not be nugatory; and the petition may be amended so as to ask for such a writ as may now be effective, and the case is remanded to that end.

*Decided May 20th, 1909.*

Appeal from the Court of Common Pleas of Baltimore City (DOBLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Isaac Lobe Straus* and *William L. Rawls,* for the appellants.

*John Prentiss Poe* and *Armstrong Thomas,* for the appellees.

WORTHINGTON, J., delivered the opinion of the Court.

The litigation in this case grew out of a contest over the selection of directors to manage the affairs of the Maryland Society for the Prevention of Cruelty to Animals of Baltimore City, a body corporate.

The election for this purpose was held in pursuance of the Act of 1908, Chapter 77, at the headquarters of the society, 612 N. Calvert street, in Baltimore City, on Friday, April 10th, 1908, at 3 o'clock in the afternoon, and it was to review the proceedings at this election and to have the Court determine which candidates received a majority of the legal

votes then and there tendered to the judges of election that this action was instituted.

By the provisions of the above-mentioned Act of Assembly twelve directors were to be elected at this election, four to serve for one year, four for two years, and four for three years, and thereafter four directors were to be elected in every year to serve for three years.

This Act was approved March 10th, 1908. Some weeks prior to its passage—that is to say, on February 13th, 1908—an election had been held by the society, and although the original charter of the society provided for a board of but *five* directors, twelve directors were chosen at that time to serve for the term of one year. Two tickets were in the field to be voted for at that election, one known as the "Shearer ticket" and the other as the "Whitridge ticket."

The contest resulted in the election of the candidates on the so-called "Whitridge ticket."

On February 22nd, 1908, a bill was introduced in the Legislature, then in session, by the freinds of the newly elected directors, according to the provisions of which the society was thereafter to be managed by a board of twelve directors, and the term of four of the twelve already elected for one year was extended to the annual meeting of the society to be held in January, 1910, and the term of four others to the annual meeting to be held in 1911, and thereafter four were to be elected annually to serve for three years.

The friends of the opposing, or Shearer, faction, having learned of the introduction of this bill in the Legislature, were able to so amend its provisions as to require instead of extending the term of some of the directors already elected, a special election for twelve directors to be held on April 10th, 1908, and as amended the bill passed and became the Act of 1908, Chapter 77, above mentioned. When it became known that a special election was to be held the contest between the opposing factions was renewed. It appears that about 327 ballots were cast or tendered at this election, of which number 151 straight ballots were cast for the Whitridge candi-

dates and 131 for the Shearer candidates, with four more ballots cast for a majority of the Shearer candidates, but containing also the names of one or more candidates on the Whitridge ticket. The result therefore was, as to a majority of the candidates, 151 for the Whitridge ticket and 135 for the Shearer ticket, with some 39 or 40 rejected or disputed ballots, not counted for either side.

On April 25th, 1908, the petition in this case was filed in the Court of Common Pleas of Baltimore City by certain adherents of the Shearer ticket against the appellees, candidates on the Whitridge ticket, and the corporation itself, alleging that the election "took place during great and continued confusion, contention and clamor, and in a densely crowded room at the headquarters of the society, on North Calvert street, in Baltimore City;" that the defendants took "unconscionable advantage of their absolute and exclusive control of the books of the society," and called out the names of persons who were not members of the society whose proxies were wrongfully and illegally received and counted for the defendants, while the ballots and proxies of many qualified members, which were duly tendered to the judges of election, in favor of the candidates on the Shearer ticket, were unlawfully rejected and not counted for that ticket, and in fact that the candidates on the "Shearer ticket" were duly elected directors of said society on said 10th day of April, 1908; and praying that a mandamus might issue ordering the admission, induction and installation of such directors so elected into office, etc.

On May 13th, 1908, a motion by the defendants to dismiss the plaintiffs' petition was filed, and on May 19th, 1908, a demurrer to the petition was filed.

Subsequently the motion to dismiss was withdrawn, and while the demurrer does not appear to have been directly passed upon by the lower Court, it must be deemed to have been overruled, as the case proceeded to trial on its merits.

On May 23rd, 1908, the answer of the defendants was filed, protesting that the Court had no jurisdiction to try the

case, denying all the material allegations of the petition, and averring in conclusion that the Court could not lawfully go behind the return and question and annul the action of the judges of election.

A replication was duly filed and the case proceeded to trial before the learned Judge of the lower Court without the aid of a jury. The trial lasted for several weeks and a great mass of testimony was taken; the record consisting of nearly 600 printed pages and containing forty-one bills of exceptions, fifteen prayers, a motion to exclude the testimony, four special exceptions, and a separate opinion by the learned Judge who sat in the case below.

As the result of the trial fourteen ballots which had originally been counted for the Whitridge ticket, were rejected by the Court, and one ballot rejected by the Judges of election was counted for that ticket, thus making the net result as to a majority of the Whitridge candidates 138 votes. The trial Court also rejected six ballots that had been counted for the Shearer ticket by the judges of election, but allowed that ticket seven votes that had been so rejected; thus making the total vote 136 as to a majority of the Shearer candidates.

Thereupon the lower Court passed the following order: "Ordered this 27th day of October, 1908, that the petition for mandamus in the above entitled cause be and the same is hereby dismissed with costs." From this final order the petitioners have appealed.

Although this appeal is brought here by the petitioners, we shall not confine ourselves to an examination of the exceptions reserved by them alone.

Indeed formal bills of exception are not necessary in a mandamus proceeding where the case is tried before the Court without the intervention of a jury.

In such a case, the question is not merely whether the rulings to which exceptions have been formally taken are right or wrong, but whether from the whole record the final order of the lower Court should be sustained or not.

As was said by this Court in the case of *Manger* v. *Board of Examiners,* 90 Md. 659: "It is the final order granting or refusing a mandamus which an appeal to this Court assails, when the case has been tried by the Judge alone."

While mandamus is a legal remedy, yet it has become more and more nearly assimilated to a proceeding in equity (*Hooper* v. *Creager,* 83 Md. 502), and especially is this true where the cause is tried before the Court without the intervention of a jury.

We shall therefore consider as well as rulings of the Court in favor of the appellants, as those against them, wherever such rulings are plainly brought to our attention for review, for while no formal bills of exception are required in such a case as this, yet it is necessary that there be either written objections filed, or proper notations made in the record, clearly indicating the rulings excepted to on both sides, and the ground of such exception, so that such rulings may be distinctly presented to this Court for its consideration. *Benson* v. *Atwood,* 13 Md. 20.

With these observations upon the practice in such cases, we will proceed to consider this case upon the whole record and to review all the rulings of the lower Court, so far as fairly presented to us for our consideration.

We shall not attempt, however, to discuss separately all the different rulings of the lower Court, but shall endeavor to declare as briefly as possible what we regard as the rules of law applicable to the several points or questions involved, and then, applying these rules to the facts as presented by the record, ascertain the result.

1. We think the lower Court was right in ruling that new members elected after February 13th, and before March 7th, 1908, who paid their dues between March 7th, and April 10th, were entitled to vote.

There is some ambiguity in the language of the Act in regard to the time limit for the payment of the dues of such members, but after the most careful consideration that we have

been able to give the matter, we are of the opinion that the learned Judge in the Court below construed the law aright.

2. It follows as of course that members of the society who were such before February 13th, 1908, and who had not resigned, and whose dues for 1907 or 1908, were paid prior to the beginning of the special election held on April 10th, 1908, were entitled to vote at said election.

3. We think that under the provisions of this Act of 1908, Chapter 77, regulating the special election, members contributing annually less than five dollars were entitled to vote at said election.

The by-laws contain the word "active" before the word "members" in prescribing who shall be entitled to vote, and only members paying annually five dollars or more, were considered active members, but the word "active" is omitted from the statute although the bill as originally introduced contained that adjective.

It is clear therefore that the adjective was purposely stricken out of the bill, upon amendment, and the effect was to permit members who ordinarily were not considered active members, to vote at the *special* election, provided for in this act.

The persons who amended the bill, were obviously dissatisfied with the election held on February 13th, and desired that it should be abrogated, and the Legislature must be presumed to have known of the object and purpose of the amended bill, and to have enacted the special provisions governing the special election to be held on April 10th, 1908, so that a larger number of members could give expression of their preferences for directors, than was allowed by the by-laws of the society.

4. It appears that at the Merchants' Bank on April 10th, 1908, at about noon, the sum of $300 was handed to Mr. Charles T. Matthews, the treasurer of the society, by Mr. Ingle, the cashier of the bank, and a list of about twenty-seven names given him of persons who were supposed to be members of the society, and whose proxies the Whitridge

people held, with the understanding that the dues of such of them as should be allowed to vote at the election should be taken out of that sum and the residue returned to the bank.

Mr. Matthews took the money, but immediately handed it back to Mr. Ingle, who took charge of it and turned it over to the teller of the bank. The money was not put to the credit of Mr. Matthews, either as treasurer or in his private capacity. In fact he kept no account at that bank, either in his own right or as treasurer of the society.

The day after the special election, Mr. Douglas H. Thomas, the President of the Merchants' National Bank, and one of the candidates on the Whitridge ticket, handed Mr. Matthews $55 as the dues of eight of the twenty-seven persons whose names were on the list above mentioned. The votes of these eight persons had been accepted by the judges of the election and the votes of the other nineteen had been rejected. We do not think this transaction amounted either to a valid payment, on April 10th, 1908, of the dues of the eight persons, or to a lawful tender of payment of their dues.

It was not a good payment, because there had been no acceptance of any specific sum of money by the treasurer on behalf of the society, and no appropriation of any certain sum to the dues of any member; and it was not a good tender, because it was made to depend on a contingency that could not happen until the election had actually taken place. To be effectual, a tender must be absolute and unconditional.

As the votes of five of these eight persons were rejected by the lower Court, upon other grounds, this ruling affects only the votes of three of such persons, and as the dues of one of these were duly tendered by Miss Briathwaite; it in fact only controls the votes of two, as presented by the plaintiffs' 14th and 34th bills of exception.

We think the votes of these two members should not have been counted.

5. It appears that the office of the society was located at 612 N. Calvert street, that Miss Keech was the bookkeeper, in charge of the books there, duly bonded and authorized to

receive membership dues; that she kept the books of account and drew the checks which were signed by Mr. Matthews, the treasurer, whose private office was located at 117 W. Pratt street. For a long period the dues of members had been invariably paid at the office to Miss Keech, who made the proper entries in the books of the·society, and deposited the money in the bank to the treasurer's credit. A few days before April 1st, 1908, the president of the society telephoned to the office of the society and gave directions that no more dues should be received there, but that they must be ·paid to Mr. Matthews at· his private office, 117 W. Pratt street. A day or two after this direction had been given, Miss Braithwaite, a young ′lady in the office of Dr. Thomas Shearer, at his request, went to the office of the society, 612 N. Calvert street, and tendered to Miss. Keech $75, as the annual dues for 1907, of each of fifteen persons, members of the society, whose·name were plainly written on the outside of the fifteen envelopes which she carried in her hand, each containing the sum of $5. Miss Keech refused to accept the money and informed Miss Braithwaite that she had been instructed by the president of the society not to receive any more dues there, and that she should go to the office of Mr. Matthews 117 W. Pratt street, for the purpose of making payment. Miss. Braithwaite, accordingly went to the office of Mr. Matthews, and offered him the dues, but he declined to receive the money, saying that the names were not familiar to him as members, but he would look the matter up and advise her the next day. The following day Mr. Matthews stated to Miss Braithwaite, over the 'phone, that the persons whose names she had given him the day before were on the books of the society, but that they would not be entitled to vote at the election on April 10th, because their dues had not been paid.

Mr. Matthews testified that tender was made to him of but three envelopes, and that the other twelve names were given him over the 'phone. But we think the tender made to Miss Keech at the head-quarters of the society was a valid and ef-

fective tender without regard to the offer of the money to Mr. Matthews.

The office of the society where the books were kept and where the dues had always theretofore been paid, was the proper place to pay them, and no member should be required to go from place to place in search of the nominal treasurer, unless for some very good reason, which does not appear in the record of this case. *Hoyt* v. *Byrnes,* 11 Me. 475; *Moffet* v. *Parsons,* 5 Taunt. 307.

6. For the same reason we think the tender made by Mr. Dallet H. Wilson, and by Mr. Matthew S. Tyson, were valid and effective tenders.

7. Whatever effect the withdrawal of the dues from the Court in the injunction case may have had upon the injunction proceedings, such withdrawal did not affect the validity of the tenders previously made by Mr. Dallet H. Wilson, for himself, and by Miss Braithwaite, for Mrs. Bernard N. Baker, at the headquarters of the society.

8. We think that a member of the society who had not resigned or withdrawn, but had failed or neglected to pay his annual dues in some one or more years, but who was still carried on the books of the society as a member, was qualified to vote at the special election, provided his dues were paid, or lawfully tendered, for the year 1907, or the year 1908.

This was shown to have been the practice of the society, and it was testified to that some prominent members sometimes neglected to pay their annual dues for several years.

9. We think that when any member gave proxies to both sides, the proxy last given should be deemed a revocation of all former proxies given by such member, but that where two such proxies with the ballots thereto attached, were presented to the judges of election, one for each side, and it could not be determined from an inspection of the proxies themselves, which of the two was the latest or last given by such member, neither of the ballots attached to such proxies should have been received or counted, but both should have been rejected.

Of course if the member giving the several proxies had been present at the election, he should have been allowed to cast his personal ballot or to declare which proxy was his last intention, but the election ought not to be delayed so that witnesses could be brought in and testimony taken in order to determine which proxy represented such intention. Where the question of fraud or mistake is involved, of course this rule should be relaxed.

10. If the revocation of a proxy was duly presented to the judges of election, or was shown at the trial to have been in the hands of the person holding the proxy, or known to him, the ballot attached to such proxy should not have been counted.

11. We think the lower Court correctly held that the two proxies to which no ballot was attached, found in the envelope, should not be counted. The Court could only count ballots and not merely proxies. Besides it appears that there were two ballots found in the same envelope with no proxies attached, and the learned Judge very properly appropriated these two ballots to the two proxies above mentioned.

12. The ballot of the Adams Express Company, and of the Standard Oil Company, on one side, and of the Acker, Merrall & Condit Co. and of the Schwind Quarry Company, on the other side, were rejected for substantially the same reason, to wit: That the proxies were not properly executed. Both sides appear to have acquiesced in this ruling and it will not be disturbed.

13. We hold that persons who on one or more occasions gave a donation for any specific purpose, but not for the purpose of becoming a member of the society, and who were not carried on the books as such were not in fact members and were not entitled to vote.

14. We think that the notation by the book-keeper, on the membership book after the name of a member for any year that he "declined to pay," "refused to pay," "resigned," or "asked name to be taken off," should be presumed to have been done by the authority of the board, and terminated the mem-

bership of such person, unless clearly shown to have been done in error, or unless the member had been duly reinstated according to the custom and practice of the society.

15. Ordinarily, honorary members of a society have no share in its management, but in this case, as we find from the record, Mrs. Augusta H. Laughlin has been a member of the society for more than twenty years and an honorary member since 1901; that when in the city she always attended the meetings of the society and voted. She attended the meeting of 1906 and voted, and the meeting of 1907 and voted, no objection being made at any time to her vote. She gave the society the fountain at Mt. Royal Station, which cost about $300. As we are dealing with a humane society, so conspicuous an act of mercy toward animals should entitle her to vote at its elections for directors, and the language of the Act of 1908, Ch. 77, is manifestly broad enough to include her as a member, qualified to vote at this special election.

16. Whether the ballot of Charles H. Boone should be counted depends on whether his proxy and ballot were tendered to the judges of election or not. This is a question of fact to be determined from the evidence, and we are not disposed to disturb the ruling of the lower Court in regard thereto.

17. The same is true of the finding of the Court on the question of the right of Dr. Wm. H. Martinet to vote. Such right depended on whether his payment of $5 on August 16th, 1907, was intended and treated as a mere donation or as the payment of membership dues. It was a question of fact to be determined from all the circumstances, and we shall not disturb the Court's ruling thereon.

18. We are of the opinion that the averments of the petition are sufficient to give the Court jurisdiction of the case, and we do not think the petition should have been dismissed because of the non-joinder of Theodore Marburg and the resignation of Thomas J. Shryock before the trial of the case in the Court below.

19. The defendant's motion to exclude the testimony offered by the petitioners to show that certain proxies and ballots tendered for candidates on the Shearer ticket had been rejected at the election was properly overruled.

20. The plaintiff's first bill of exceptions was taken to the action of the Court in overruling and rejecting the petition and motion of the plaintiffs to have the ballots and proxies cast at the election brought into Court for inspection by the parties or their counsel under the supervision of the trial Court, but as the ballots and proxies were subsequently brought in and inspected, this ruling furnishes no question for review by this Court.

21. The petitioners' second and third bills of exception relate to the admissibility of certain evidence, and we find no error in the ruling of the lower Court thereon.

The views already expressed render it unnecessary to pass separately upon the defendants' several prayers.

From what we have said it follows that certain ballots counted for the Whitridge ticket should have been rejected— to wit, the ballots of Mrs. J. M. Thompson and Mrs. Howard Lloyd, because the transaction at the Merchants' Bank did not constitute a payment or valid tender of dues so as to entitle them to vote.

The ballot of Rice Bros., because a revocation of the proxy was obtained and presented to the judges of election. The ballot of Robert Kinnier, because he gave several proxies, and testified that the last was to Miss Shearer, as it could not be determined from the proxies themselves which was the latest, the ballot should not have been counted for either side.

We think, however, that the vote of Mrs. Howard Munnickhuysen should have been counted for the Whitridge ticket, as it seems to have been rejected solely on the ground that she paid less than $5 membership dues.

For the reasons assigned it also follows that the following rejected ballots should have been counted for the Shearer ticket—to wit, the ballots of (1) Dallet H. Wilson, (2) Mrs. T. Edward Hambleton, (3) Mrs. Bernard N. Baker, (4) Mrs.

·Catherine M. French, (5) Mrs. Charles G. Baldwin, (6) Mrs. J. L. Blackwell, (7) Mary Leigh Brown, (8) Mary E. Evans, (9) Miss Elizabeth B. Flemming, (10) Alexander Kerr & Bro., (11) Matthew G. Tyson, and (12) Mrs. A. L. Laughlin.

After several times reviewing the many rulings of the trial Court respecting the count of the ballots we find no other reversible error therein.

The result of these corrections is to deduct four votes from the Whitridge score, and to add one vote thereto, and to add twelve votes to the Shearer score, so that the final tabulation, as we ascertain it to be, is as follows:

| *Shearer Score.* | *Whitridge Score.* |
|---|---|
| Conway W. Sams........148 | H. F. Baker...........137 |
| Gen'l Thomas J. Shryock.148 | Duoglas H. Thomas......137 |
| Theodore Marburg.......148 | Charles T. Matthews.....136 |
| Micajah W. Pope........148 | Rev. A. C. Powell.......136 |
| Charles A. King ........148 | Mrs. Louis Federlicht....136 |
| Mrs. E. A. Jenkins......148 | Levi Gottschalk..........136 |
| Miss Mary B. Shearer...148 | Miss Elizabeth L. Clarke..136 |
| Mrs. Wilson Patterson...147 | Mrs. Enoch P. Callow...136 |
| Mrs. F. W. Lovering.....147 | Dr. Wm. Whitridge......135 |
| Miss Dollie Fulton.......146 | J. Spencer Clarke.......135 |
| Mrs. J. H. Carroll.......145 | Charles F. Macklin......135 |
| Isaac Lobe Straus.......145 | Mrs. Walter P. Smith....135 |

According to this tabulation, the lowest vote for a candidate on the Shearer ticket is 145, and the highest vote for a candidate on the Whitridge ticket is 137, thus making a majority of eight votes for the lowest candidate on the Shearer ticket over the highest on the Whitridge ticket, and an average majority of about twelve votes for all the candidates on that ticket. We therefore ascertain from an inspection of the whole record that all of the candidates on the Shearer ticket were duly elected directors of the society at the election held on April 10, 1908.

The defendants contend, however, that as the terms of office of four of the directors so elected have expired, and as, in accordance with the provisions of the Act of 1908, Chapter 77, an election was held on January 28th, 1909, to fill the places of the four directors whose terms had so expired, that the prayer of the petition must be denied, because the writ if granted would now be nugatory, and that therefore without regard to what the conclusions of this Court may be as to the result of the election, the order of the lower Court dismissing the petition must be affirmed. But we cannot agree that the order appealed from should be affirmed on such grounds. It is true that as the allegations and prayers of the petition now stand, no writ of mandamus in exact conformity therewith would be effective, but the Act requires the directors elected on the 10th day April, 1908, to decide before the next annual meeting of the society thereafter, which of their number shall serve for the respective terms of one, two and three years, and we were informed at the argument of the case that the directors on the Shearer ticket claiming to have been lawfully elected had met, organized and decided which four of their number should serve for one year, which four for two years and which four for three years in accordance with the above mentioned provision of the Act of Assembly, and therefore, if the case be remanded for further proceedings, leave to amend the petition may be obtained so as to present the case to the trial Court in the status it now is, and relief be prayed accordingly.

In the cases relied on by the learned counsel for the defendants in support of their contention that the writ would now be nugatory, the circumstances were such as would have rendered an amendment wholly unavailing. In those cases the time within which the thing desired to be done could be done, had wholly passed, and no relief could be granted under any form of amendment of the petition. *Duval v. Swan,* 94 Md. 608; *Wells v. Hyattsville,* 77 Md. 43.

But it would be wholly improper to refuse the writ if a simple amendment setting out the facts, affecting the status

of the parties, that have occurred since the filing of the petition and praying relief according to these changed conditions, will effectually remedy the defect.

In *Manger's Case,* 90 Md. 659, this Court, speaking through McSHERRY, C. J., said: "For the reasons we have asisgned, the order dismissing the petition will be reversed and the cause will be remanded for such further proceedings in accord with the views expressed in this opinion as may be deemed desirable."

In the present case after a careful consideration of all the rulings of the lower Court that were objected to by either side, and the points or questions thereby raised fairly presented to this Court for review, we have reached the conclusion that the order dismissing the petition must be reversed, but as the terms of four of the persons whom we ascertain to have been elected directors on April 10, 1908, have expired, no effective mandamus in the present state of the pleadings can be issued. We will therefore remand the case for further proceedings, so that, if desired, the pleadings may be amended, the right of any of the directors so elected, to be now installed, determined, and the writ issued in favor of such of them as may be found entitled.

> *Order reversed with costs and cause remanded.*