**Roger F. WILLIAMS, Plaintiff,**

v.

**STERLING OIL OF OKLAHOMA, INC., a Delaware corporation, Alfred Jervis and Louis H. Herman, Defendants.**

Court of Chancery of Delaware, New Castle.

June 10, 1970.

Richard J. Abrams and Mason E. Turner, Jr., of Richards, Layton & Finger, Wilmington, for plaintiff.

William Poole and Richard E. Poole, of Potter, Anderson & Corroon, Wilmington, for defendant Sterling Oil of Oklahoma, Inc.

Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, for defendants Alfred Jervis and Louis H. Herman.

SHORT, Vice Chancellor.

This is a declaratory judgment action challenging the validity of proxies. The case is submitted to the court for final decision upon the record, consisting of the pleadings, affidavits, depositions and letters of counsel stipulating certain facts.

Plaintiff, Roger Williams, is a shareholder of defendant Sterling Oil of Oklahoma, Inc. (Sterling) and is a representative of the Committee for Better Management of Sterling (Committee), a group of dissident shareholders who solicited proxies to be voted at the annual meeting of the corporation held on July 17, 1969. On the agenda for the meeting was the election of a board of directors and a proposal to amend Sterling's certificate of incorporation to increase the authorized shares of common stock from 4,000,000 to 10,000,000 shares.[1]

Shareholders of record on June 5, 1969 were eligible to vote at the meeting. The total of outstanding shares entitled to vote was 3,863,591. Management proposed a slate of directors and supported the proposed charter amendment. The Committee proposed an opposing slate of directors and opposed the charter amendment.

At the annual meeting on July 17, 1969 the individual defendants, Louis H. Herman and Alfred Jervis, employees of Corporation Trust Company, were appointed the inspectors and judges of the election. They took an oath of office and collected the ballots and proxies. The Committee proxies were turned over to the inspectors in two cartons. The meeting was recessed until July 22 so that the inspectors could check and count the Committee proxies which were apparently in some disorder.

During the tabulation it was discovered that two virtually identical proxies had been submitted by Parker, Bishop & Welsh, Inc. (PBW), an Oklahoma City stock brokerage concern. The pro-management proxy was dated July 10, 1969; the pro-Committee proxy was undated. Both proxies were in envelopes which were identically postmarked, July 10, 1969; the hour indication on both postmarks recited only "P.M." Both proxies were signed by Christine Burd, with a stamp reading "Authorized Signature (Authorizing Resolutions Filed with Mid-West Stock Exchange & Transfer Agent)." The number of shares being voted was 184,965 and if the shares are not to be voted for management the charter amendment does not receive the statutory majority and fails to pass. Prior to the reconvening of the meeting on July 22, 1969 defendant Herman orally reported the conflicting proxy situation to counsel for both management and the Committee. The meeting was reconvened, a tentative report of the inspectors was read and the meeting was again recessed until July 25, 1969.

---

1. Management's slate of directors have been elected by a majority of the votes cast regardless of the outcome of this litigation. Plaintiff does not challenge the election of the directors but in this action challenges only the adoption of the charter amendment.

On July 23, 1969 Sterling filed an action in this court, naming representatives of the Committee and the inspectors of the election as defendants, seeking declaratory relief as to the validity of the pro-management proxy submitted by PBW, the invalidity of the pro-Committee proxy and a declaration that the charter amendment had been adopted by the requisite vote.

The meeting was reconvened on July 25, 1969. The inspectors gave an oral report of their tabulation. The PBW proxy was not counted and apparently not discussed, nor was Sterling's action in this court mentioned or discussed. Without transacting any business the meeting was further adjourned until August 20, 1969.

On July 31, 1969 an attorney for management presented to the inspectors an affidavit signed by Albert L. Welsh, executive vice-president, treasurer and a director of PBW. In the affidavit Welsh stated, inter alia, that PBW "concluded that we wished to vote shares of Sterling Oil in favor of the Management and in opposition to the committee;" that he "thought that our employees had been instructed to execute and return the Management proxy and destroy the Committee proxy;" that "execution of the Committee Proxy by Miss Burd was a mistake and in doing so, she was acting without the authority of any member of our organization and contrary to our specific intent;" and that he was authorized by PBW to "declare the Committee Proxy * * * to be void and of no force and effect whatever and * * * [to] declare the' Management Proxy to be the valid and existing Proxy of this firm and to be voted and reported as voted by the inspectors."

On the basis of this affidavit the inspectors determined that they would honor the PBW Proxy in favor of management. They sent a revised report on the outcome of the election to both management and the Committee. They also filed an answer to the complaint in the Sterling action in which they stated that they proposed to honor the management proxy.[2]

The meeting reconvened on August 20, 1969 and the inspectors submitted their final report. They declared the management directors elected and the charter amendment passed.

Plaintiff seeks a judgment declaring that the amendment to Sterling's certificate of incorporation failed to obtain the vote of a majority of the issued and outstanding shares as required by 8 Del.C. § 242. Specifically, plaintiff challenges the validity of the vote of the PBW shares for management.[3]

The individual defendants, the inspectors of the election, have filed a motion to dismiss the action as to them. They take no position on the outcome of the controversy between plaintiff and Sterling. Plaintiff does not oppose dismissal as to these defendants and they are accordingly hereby dismissed as parties defendant.

Plaintiff contends that the PBW proxy is invalid for several reasons. It is argued that the inspectors' acceptance of subsequently submitted evidence in the form of the Welsh affidavit to resolve conflicting proxies was improper. Plaintiff relies upon Investment Associates v. Standard Power & Light Corp., 29 Del.Ch. 225, 48 A.2d 501, for the proposition that the role of the inspectors of election is simply ministerial and that the inspectors cannot go beyond the proxies to determine their validity. Plaintiff argues that the inspectors have done so in this case when it was incumbent upon them to merely cancel out the conflicting proxies and count neither.

2. Subsequently, Sterling caused its pending action to be voluntarily dismissed. On September 12, 1969, shortly after the dismissal, plaintiff filed the present action.

3. The complaint also alleges that certain shares in the name of Jesse A. True and Catherine A. True have been improperly voted in favor of management. Plaintiff has abandoned his claim with respect to these shares.

I am persuaded by the record that the execution of the conflicting proxies in this case was a clerical mistake on the part of Miss Burd. Her deposition testimony shows that she was obviously confused about her authority and specific orders. Mr. Welsh in his affidavit states that it was PBW's intention to return the management proxy and destroy the Committee proxy.

It is settled law in this state that the role of the inspectors of a shareholder election is ministerial rather than judicial. Gow v. Consolidated Coppermines Corporation, 19 Del.Ch. 172, 165 A. 136. In *Investment Associates,* supra, this court held that the inspectors of election should not resolve an issue of forgery of proxies because the resolution of that issue is judicial rather than ministerial and, therefore, beyond the powers of the inspectors. The case here involves a clerical mistake easily corrected by an explanatory affidavit, and the resolution of that mistake, unlike a question of a forged proxy, is not a judicial determination. A policy which would favor the correction of an obvious clerical mistake over the alternative of disenfranchising the shareholder, as plaintiff's contention would require, should be adopted. See Aranow and Einhorn, Proxy Contests for Corporate Control (2d ed.), p. 440.

Plaintiff relies upon Pope v. Whitridge, 110 Md. 468, 73 A. 281. That case involved a contest over the election of directors of the Maryland Society for the Prevention of Cruelty to Animals of Baltimore City. The court held, in part, that when a "member" gave proxies to both sides and it could not be determined from an inspection of the proxies themselves which of the two was last given neither of the ballots attached to the proxies should be counted. The case is not persuasive here. Unlike this case there is nothing to indicate that the court in *Pope* was dealing with an obvious case of clerical mistake. Moreover, the Maryland court stated that where a "question of fraud or mistake is involved, of course, this rule should be relaxed."

Next, plaintiff argues that the PBW proxy violates the regulations of the National Association of Securities Dealers (NASD) which were promulgated by that body pursuant to § 15A of the Securities Exchange Act of 1934 which authorizes a national securities association to supervise the over-the-counter securities market. The rules of NASD require that a broker submit proxies it receives as nominee-holder to the beneficial owners to solicit their wishes.[4] PBW here executed the proxies for the shares registered in its name without soliciting the wishes of the beneficial owners. Therefore, says plaintiff, neither of the proxies is valid.

Plaintiff recognizes the rule of *Investment Associates* which establishes the principle that this court will not take cognizance of and grant relief for a violation of the Securities Exchange Act and the rules and regulations promulgated thereunder. In that case, a proceeding challenging the election of a director, it was contended that a nominee for director solicited a proxy without the required proxy statement in violation of rule X–14A–1 of the Securities Exchange Commission (SEC). This court held that it would not take cognizance of the regulation in judging conduct which was otherwise unassailable under Delaware law and would not enforce the rules and regulations promulgated under the act.

Plaintiff argues that this case is not governed by the holding in *Investment Associates* and points to the following language from the opinion in that case:

"However, I think it should be made clear that some acts which constitute violations of the Securities Exchange

---

4. See National Association of Securities Dealers, Inc. Manual, § 2151 (CCH 1969). It is to be noted that the rules of the New York Stock Exchange require similar conduct on the part of the broker.

Act and the rules and regulations formulated thereunder may also be cognizable * * * as independent wrongs for which this Court would grant a remedy, even if the Securities and Exchange Act had never been passed."

Plaintiff contends that PBW's conduct should be viewed as an "independent wrong" for which this court should grant a remedy, that is, the cancellation of its proxy. Is the conduct complained of cognizable as an "independent wrong?" Plaintiff argues that the court should take judicial notice of the SEC and NASD rules and impose these rules as a minimum standard of conduct in judging the PBW proxy. I am satisfied that imposition of such rules would not only be contrary to the policy enunciated in *Investment Associates*, but would also violate the settled rule in this state that in dealing with its stockholders a Delaware corporation need not look beyond the registered owners.

Thus, in American Hardware Corp. v. Savage Arms Corp., 37 Del.Ch. 59, 136 A.2d 690, plaintiff-shareholder of defendant, Savage Arms Corporation, sought to restrain Savage from the transaction of any business at a shareholder meeting. Plaintiff contended that the notice of the meeting, sixteen days, was unreasonably short. One-third of the Savage shares were held in brokers' accounts and plaintiff argued that the rules of the New York Stock Exchange forbid brokers to vote shares of stock held in customer accounts without the instruction of the beneficial owners and that the sixteen day time period would not allow compliance with the rule. The Supreme Court said:

"The answer to this point is simple. Under the General Corporation Law, no one but a registered stockholder is, as a matter of right, entitled to vote, with certain exceptions not pertinent here. In re Chilson, 19 Del.Ch. 398, 408, 168 A. 82. If an owner of stock chooses to register his shares in the name of a nominee, he takes the risks attendant upon such an arrangement, including the risk that he may not receive notice of corporate proceedings, or be able to obtain a proxy from his nominee. The corporation, except in special cases, is entitled to recognize the exclusive right of the registered owner to vote. Cf. 8 Del.C. § 183. It has been held in this State that an unregistered stockholder may not dissent from a merger and demand appraisal of his stock. Salt Dome Oil Corp. v. Schenck, 28 Del.Ch. 433, 41 A.2d 583, 158 A.L.R. 975. The rule of the Exchange is no doubt a salutary one, but it has no bearing upon this case. The corporation has ordinarily discharged its obligation under Delaware law when is mails notice to the record owner."

The reasons underlying the rule followed in *American Hardware* have been stated in other cases. See Salt Dome Oil Corp. v. Schenck, 28 Del.Ch. 433, 41 A.2d 583, 158 A.L.R. 975; Olivetti Underwood Corp. v. Jacques Coe & Co., 42 Del.Ch. 588, 217 A.2d 683, in which it was said:

"The corporation is entitled to confine itself to dealing with registered stockholders in intracorporate affairs such as mergers; it should avoid becoming involved in the affairs of registered stockholders vis-à-vis beneficial owners; and, in so doing, in the best interests of all stockholders, the corporation should avoid becoming involved in the expensive and time-consuming trial of such collateral issues in merger appraisal proceedings."

The court in *Olivetti* held that the surviving corporation of a merger could not require brokers who were registered owners of stock in the merged corporation to prove that they were duly authorized by the beneficial owners to seek appraisal.

The reasons stated in the cited cases apply with equal force to a matter of internal affairs such as the present. So, in the counting of proxies, Sterling was not

required to look beyond PBW in determining the right to vote the shares registered in its name.

The proxy voted for the amendment of Sterling's certificate of incorporation was properly counted and the amendment is declared to have passed by the requisite vote.

Order on notice.