STATE OF MARYLAND, to Use of LUND et ux., v. ATLANTIC TRANSPORT CO. et al.

(District Court, D. Maryland. October 29, 1919.)

SEAMEN &=29(2)—WRONGFUL DEATH; NEGLIGENCE IN LOADING SHIP.

    A wharf owner, which furnished a mast for use in loading fishplates on a ship, and the stevedore doing the loading, both *held* in fault for the death of a seaman, killed by the breaking of the mast, which was rotten and was also dangerously overloaded by the stevedore.

In Admiralty. Suit by the State of Maryland, to the use of Christian Lund and Anna K. Lund, his wife, against the Atlantic Transport Company and the Bethlehem Steel Company. Decree for libelant against both respondents.

Arthur E. Hamm and Francis L. Klemm, both of Baltimore, Md., for libelants.

George Forbes, of Baltimore, Md., for respondent Atlantic Transport Co.

Alexander Preston, of Baltimore, Md., for respondent Bethlehem Steel Co.

ROSE, District Judge. The equitable libelants are natives of Denmark, and there reside. Their son was a member of the crew of the Percy R. Pyne No. 2, which was taking on railroad fishplates at the wharf of the Bethlehem Steel Company at Sparrows Point in this state. These were being put on board by the employés of the respondent the Atlantic Transport Company, hereinafter called the "steve-

---

&=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dore." For that purpose it was using a mast belonging to the Bethlehem Steel Company, under an arrangement with the latter by which it paid so much per hour for the electric current consumed in operating the winches, and had the use of the mast, boom, etc., without additional charge.

Young Lund had nothing to do with loading the ship. At 1 o'clock of the afternoon on the day he met his death, he came up on deck, and stopped for a moment to look over the ship's rails, while an iron tub, full of fishplates, was being lowered into the hold. At that instant the mast broke and the boom fell, striking him on the back of the neck and killing him instantly. He seems to have been intelligent, sober, and thrifty. He was about 20 years and 3 months old. He was earning $75 per month, in addition, of course, to his board and lodging on ship.

The law of Maryland limits the amount which parents can recover for the death of an infant child to such pecuniary benefits as they can reasonably expect before he attains the age of 21 years. Agricultural & Mechanical Ass'n v. State, Use of Carty, 71 Md. 87, 18 Atl. 37, 17 Am. St. Rep. 507. Under that limitation, I find the recoverable pecuniary damages to the equitable libelants to be $400, and that is all that is involved in this case.

It has nevertheless been sharply contested as between the two respondents, with the usual flat contradiction in testimony. The mast, which was 18 or 19 inches in diameter, was rotten. Its outer shell for a depth of 2 or 3 inches was sound, and then there were about 3 inches of decayed wood. Some of the expert and apparently disinterested witnesses who examined it said that the 8 inches of heart, while not rotten, were dead, and had lost their strength. Others claimed that they were sound and strong. There is no very satisfactory evidence as to the age of the mast. The witnesses on behalf of the steel company said that it had been put up about two years before the accident. While they claim to know from whom it had been purchased, their evidence was not corroborated by the production of bills showing when it was bought. Competent witnesses for the equitable libelants thought that it was much older. That it rotted was doubtless due to the fact that certain oak strips had been nailed to it to protect it at a point where it was likely to be chaffed by the tackle connected with the boom. Water had apparently gotten in between it and these oak strips, and had rotted it. The liability to decay at such a place is well recognized, but it does not appear that the Bethlehem Steel Company had ever taken any pains to ascertain whether it had taken place. On the other hand, I am persuaded that it would not have broken, except for the negligence of the employés of the stevedore. It knew that not more than 30 bundles of fishplates should be raised at any one time, and so instructed its employés. I am satisfied that the immediate cause of the accident was the attempt on the part of some of them to raise twice as many in one load. I believe the witness who so testified. The stevedore replies that even 60 bundles would not have broken the mast, had it been thoroughly sound. Perhaps so, but that

261 F.—27

does not excuse the doing of what was clearly understood to be dangerous.

Both the respondents were in fault—the steel company because it did not closely inspect the mast at a point where decay was quite possible. If it had done so, it would have discovered that not only the mast was rotten, but the inside of the oak strips had themselves become decayed. The stevedore attempted to raise a load that it knew to be excessive.

A decree for $400 will be passed in favor of the equitable libelants against both respondents; between themselves, they will be required to contribute equally to its payment.