(Decided 11th June, 1889.)

---

The Agricultural and Mechanical Association of Washington County *vs.* The State of Maryland, use of Samuel Carty.

*Construction of Sec. 1 of Art. 67 of the Code relating to Negligence causing Death—Measure of Damages—Parent and Child—Prayers and Instructions.*

In an action for damages under the Negligence Act, (Article 67, section 1, of the Code) the jury in estimating the damages are confined to the pecuniary damages sustained by the plaintiff.

In a suit by a father under this statute to recover damages for the death of a minor child alleged to have been caused by the defen-

Agricultural and Mechanical Association *vs.* State, use of Carty.

dant's negligence, the jury cannot be allowed to take into account, in estimating the damages, any expectation of pecuniary benefit to the plaintiff from the continuance of the child's life beyond minority, although the father had emancipated his son two years before he was killed; and he was working for himself, and had voluntarily given each year since his emancipation, a part of his wages to his father, and "had said that after he got of age he would help to fix up the property."

The multiplication of prayers substantially the same, on subjects about which the law has been thoroughly well settled, is a practice much to be deprecated.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the plaintiff offered in evidence the testimony of Samuel Carty, the equitable plaintiff, and father of the deceased, who testified that he is fifty-two years of age, and was the father of John Carty, who was killed on the fair ground of the defendant on the 19th day of October last; that the son was nineteen years and seven months old at the time of his death; that he had emancipated his son two years before he was killed; that the son was working for himself, and that he had voluntarily given each year to witness since his emancipation, $75.00 or $80.00 of his wages; that he was a farm hand and earned from $110 to $120.00 a year; that he was living with witness except when at labor; that he was an industrious boy of good habits, kind and affectionate, and devoted to his parents.

The plaintiff then asked the witness, "Did you have any reasonable expectation that he would do this after he became of age?" The defendant objected to the introduction of any testimony as to the value of the services of the deceased, and the expectation of the equitable plaintiff to receive pecuniary assistance from the deceased after he became twenty-one years of age.

But the Court (Syester, J.) refused to sustain the objection, and allowed the following to go to the jury : "That the deceased had said that after he got of age he would help to fix up the property, and that he never said anything about getting married; that witness was a poor laboring man, with a wife, three children—'one a cripple;' that the witness was fifty-two years of age, not in very good health." To the admission of this testimony, with the qualification that the declarations and promises of the deceased to his father and brother are not to be accepted by the jury as furnishing a fixed standard or measure of recovery according to the amounts promised or mentioned in the declarations, but only as evincing a disposition on the part of the deceased, from which the jury may find a ground for a reasonable expectation on the part of the plaintiff of pecuniary benefit in the life of the deceased, it was in no sense binding on the deceased, and furnished no standard of loss to the plaintiff, but is only admissible as affording ground for a reasonable expectation of pecuniary aid in case the deceased had lived, and as indicating his disposition towards his parents, the defendant excepted.

*Second Exception.*—The plaintiff offered the testimony of Silas Shifler, that he had seen the deceased about a half hour before he was killed pass over the race track, which surrounded the circle where the balloons were being filled, into said circle, without interruption, and inquired of him where he was going. And upon cross-examination, for the purpose of contradicting him, Shifler was asked whether he had not told the deceased not to go into the circle where the balloons were being filled, "that it was dangerous;" to which the witness replied that he had not so told him. And was then asked whether he had not said to Hersberg, after the accident, that he had told the deceased not to enter the enclosure about half an hour or twenty minutes before he was killed; to

which he replied that he had not so said to Hersberg. Whereupon, Hersberg was called, who testified that Shifler had so said to him. Which was admitted against the objection of the plaintiff, with an instruction from the Court that it was not to be considered by the jury, unless they considered that it was part of the statement and conversation between Shifler and the deceased, with reference to which Shifler had already testified, as to his having seen the deceased going toward the enclosure and had asked him where he was going, and that it was part of what was then and there said by Shifler to the deceased, but omitted by him in his direct testimony.

And thereafter, the defendant further asked the witness, Shifler, whether, at the grand stand half an hour after the deceased had been killed, he had not said to Mr. and Mrs. Huntsberger that he had repeatedly warned the deceased not to go into the enclosure where the balloons were, that it was dangerous; to which he replied he had not. Whereupon the defendant proposed to prove by Mr. and Mrs. Huntsberger, that about half an hour after the accident, and at the grand stand, the witness Shifler said to them, that he had repeatedly warned the deceased against going into the enclosure where the balloons were, that it was dangerous; to which the plaintiff objected, and the Court sustained the objection, because there was nothing in the proposed evidence that tended to show that the conversation and declarations of Shifler had any connection with, or could be, or was a part of what Shifler had testified to as having occurred between him and the deceased, when he saw him a short time before the accident going toward the enclosure, as testified to in chief. The defendant excepted.

*Third Exception.*—The plaintiff offered the five following prayers, the additions in brackets at the bottom of the first, third and fourth prayers being made by the Court.

1. That if the jury find from the evidence that the defendant was the owner of lands in or near Hagerstown,

Agricultural and Mechanical Association *vs.* State, use of Carty.

which it used for holding exhibitions, and that on the 19th of October, 1888, it held one of said exhibitions thereon, and that upon a part of said grounds, where, to the knowledge of the officers and managers of the defendant, a considerable number of the visitors to said exhibition would frequent, there were planted by the defendant large and heavy poles, and that they were insecurely and improperly planted and stayed so as to be dangerous; and further find that John Carty was a visitor to said exhibition, and whilst a visitor attending said exhibition, was struck and killed by the falling of one of said poles, and that his death was the result of said pole being insecurely and improperly planted and stayed so as to be dangerous; and further, that the said John Carty could not have avoided the casualty which caused his death, by the exercise of ordinary care and caution, and that he did, on that occasion, use such care and caution; and further find, that the said John Carty, at the time of his death, was between nineteen and twenty years of age, and was emancipated by his father, Samuel Carty, but voluntarily aided and assisted in the support of his father and his father's family, and that there was reasonable expectation that he would continue thus to assist his father, for whose use this suit is brought, if the jury so find, then their verdict must be for the plaintiff, [but the jury will consider it in connection with the defendant's eighth and tenth prayers.]

2. That even though the jury believe that the deceased, John Carty was guilty of a want of ordinary care and prudence in crossing the race track of the defendant, and in going upon the space surrounded by said race track under the circumstances testified to before them; yet, if they further find, that if the agents of the defendant had used in and about the planting and staying of the pole which fell and killed the deceased, ordinary prudence and care, by having the end of said pole cut for

Agricultural and Mechanical Association *vs.* State, use of Carty.

planting in a reasonable and usual way; and by having it planted to a usual and proper depth, and fastened and stayed in a reasonable and usual manner, that the said accident would not have occurred, then the plaintiff is entitled to recover, provided they find the other facts set forth in the plaintiff's first prayer.

3. That even if the jury find that the deceased, John Carty, was guilty of a want of ordinary care and prudence, tending in a remote degree to cause the injury which resulted in his death, yet, if they shall further find that there was negligence on the part of the defendant's agents, which was the proximate and immediate cause of the injury which caused the death of John Carty, the action is maintainable, notwithstanding the deceased may not have been entirely without fault in the first instance. [This instruction is to be taken and considered with the defendant's eighth and tenth prayers.]

4. If the jury find from the evidence that the defendant was the owner of a parcel of ground in or near Hagerstown, and was holding a fair or exhibition on said ground on the 19th of October, 1888, and that part of said exhibition on said day was to consist of balloon races and trapeze performances in the air, and that the public was invited to attend and witness said exhibition; and further find, that the defendant, through its agents, planted large poles, and did not use ordinary care, skill and prudence in the planting of the same, and in guarding against accidents during the continuance of the said exhibition; and further find, that during said exhibition one or more of said poles fell, and that one of them in falling struck John Carty and instantly killed him, and that his death was the result of such want of ordinary care, skill and prudence on the part of the defendant and its employés in the planting, the staying and the use of the said poles; and further, that John Carty could not have avoided the casualty which caused his death by the

exercise of ordinary care and caution, and that he did on that occasion use such care and caution; and further find, that the said John Carty, at the time of his death, was between nineteen and twenty years of age, and was emancipated by his father, Samuel Carty, but voluntarily aided and assisted in the support of his father and his father's family, and that there was reasonable expectation that he would continue thus to assist his father, for whose use this suit is brought, if the jury so find, then their verdict must be for the plaintiff. [This prayer is granted, to be considered in connection with the defendant's eighth and tenth prayers.]

5. That ordinary care and caution is such a degree of care and caution as men of ordinary prudence under similar circumstances usually employ; and that in determining whether or not the deceased, John Carty, used ordinary care and caution, they shall consider the age of the deceased, and all the facts and circumstances of the case as given in evidence, and with such facts the jury may consider the ordinary conduct and motives of men for avoiding an undue exposure to risks and danger in determining the question whether the deceased exercised reasonable care and caution to prevent the accident.

And the defendant offered the thirteen prayers following:

1. That if the jury believe from the evidence that the plaintiff had emancipated his son, and at the time of his death had no legal claim upon him for services, then their verdict must be for the defendant.

2. That the evidence produced in this case of the intention of the deceased to contribute to the support of his father, is too vague to enable the jury to estimate damages merely compensatory, and the plaintiff cannot recover.

3. That if the jury shall believe from the evidence that there was negligence on the part of the defendant,

yet, if they further believe that the deceased would have escaped the injury by the exercise of ordinary care and diligence on his part, that then there can be no recovery in this case, and the verdict must be for the defendant.

4. That if the jury believe that an invitation was extended to all persons who wanted to help to hold the balloons, to come over into the circle where the balloons were being filled, and that said circle was distinctly defined and obvious by posts and railing surrounding it, and that the said circle was not open for the accommodation of visitors, and shall further find that the deceased went over into the circle in response to this invitation, but when he was in the circle, and while he was not helping to hold the balloon, but standing in dangerous proximity to a pole used in filling the balloon, and was ordered and directed by the agents of the fair company to get away from his then position, but did not do as he was ordered, and that after he was so ordered, he was killed by the falling of a pole, and that he was of age, intelligence and capacity to take care of himself, and that the killing would not have happened but for his refusal to obey the order of the agent of the fair association, then the verdict must be for the defendant.

5. That if the jury believe that an invitation was extended to all persons who wanted to help to hold the balloons to come over into the circle where the balloons were being inflated, and shall further believe that the deceased went over into the circle in response to this invitation, but when he was over in the circle he did not help to hold the balloon, and did not go within the circle for that purpose, and was of age, intelligence and capacity to take care of himself, and while in the circle he was killed by the falling of a pole used in inflating the balloon, then the verdict must be for the defendant.

6. That if the jury find that the deceased was admitted into the ground of the company upon a ticket issued

by the company, and that it was not necessary for him to go in the space within the track to see any part of the exhibition of the company, and that the company used open and notorious means sufficiently plain to inform holders of tickets of admission to the fair, of ordinary intelligence, that said space was not intended for visitors holding tickets of admission to the fair, and that the deceased was of ordinary and reasonable intelligence and capacity to understand the means used by the company to exclude visitors from said space, and that the deceased by the exercise of ordinary care and caution could have ascertained that fact, and that he did go in said space and was killed in consequence of being there; then the verdict must be for the defendant.

7. That if the jury find that the company was preparing for a balloon ascension, and that the balloon and poles used in connection with the same were located in the circle within the track, and that the deceased voluntarily and of his own accord went into dangerous proximity to said poles, against the orders of the company communicated to him, and whilst there was killed by the falling of one of the poles used in filling said balloon, and shall further find that the deceased was of age, intelligence and capacity to take care of himself, and that the killing would not have happened but for the presence of the deceased at the place, then the plaintiff is not entitled to recover, and the verdict must be for the defendant.

8. That if the jury find that the deceased was on the ground of the fair company in virtue of the ticket offered in evidence, and was also attending to the cattle of Mr. Shifler, and that he was furnished with a safe location for the cattle under his charge, and that he went to the place where he was killed without the permission of the fair company, which was a part of the fair grounds, enclosed by posts and railing, readily observed, and was

there against its orders, communicated to him in pursuance of the rules and regulations of the company, and while there was killed by the falling of a pole used in the filling of the balloon, and find that he was of age, intelligence and capacity to take care of himself, then the conduct of the defendant in going on to the part from which he was forbidden, as stated above, will prevent a recovery, and verdict must be for the defendant.

9. That if the jury believe there was negligence on the part of the company in charge of the fair, yet if the jury believed the deceased would have escaped the injury by the exercise of ordinary care and diligence on his part, then the verdict must be for the defendant.

10. That if the jury believe the deceased in going towards the circle spoken of by the witness, where the balloons were being filled, was stopped by the agents of the defendant appointed as guards, and told that he could not go into said circle, and such notice was given in pursuance or execution of the usages, rules or regulations of the defendant, and find that he was of age, intelligence and capacity to take care of himself, and after being so told, did go upon said circle and was killed in consequence of being there, then the verdict must be for the defendant, unless they further find that after being so notified, he was invited there by some other officer or agent of the defendant.

11. That even though the jury should find a verdict for the plaintiff, in estimating the damages they are not to take into consideration the mental pain and suffering of the deceased, nor grief of the plaintiff in consequence of the death of his child, and are not to give against the defendant punitive or exemplary damages, but in estimating the damages they are confined to the pecuniary damages sustained by the plaintiff, and can only give such damages as the jury may believe, from all the evidence in the case, will be an adequate compensation for

Agricultural and Mechanical Association *vs.* State, use of Carty.

the loss of his son's *life*; ["life" substituted for "services," by the Court].

12. That even though the jury should find a verdict for the plaintiff, in estimating the damages they are not to take into consideration the mental pain and suffering of the deceased, nor the grief of the plaintiff in consequence of the death of his child, and are not to give against the defendant vindictive or exemplary damages, but in estimating the damages they are confined to the pecuniary damages sustained by the plaintiff, and can only give such damages as the jury may believe from all the evidence in the case will be an adequate compensation for the loss of his son's services until he shall arrive at the age of twenty-one years.

13. That this action is for the recovery of such damages only as will compensate for the reasonable expectations of the father to receive pecuniary assistance from the deceased.

The 'Court granted the plaintiff's first, third, fourth and fifth prayers, and rejected his second prayer. And granted the third, fourth, eighth, ninth and tenth prayers of the defendant, but refused to grant its first, second, fifth, sixth, seventh, eleventh, twelfth and thirteenth prayers, but granted its eleventh prayer by striking out the word " services " and inserting the word " life."

The defendant excepted, and the verdict and judgment being against it, this appeal was taken.

The cause was argued before MILLER, ROBINSON, IRVING, STONE, BRYAN, and McSHERRY, J.

*\*Alexander Neill, Frederick F. McComas,* and *Edward Stake,* for the appellant.

In the case of the *State, use of Coughlan vs. Balto. & Ohio Railroad Co.,* 24 *Md.,* 84, it was said : " To submit to a jury the value of a life without limit as to years would

---

\* Present at the hearing but took no part in the argument.

Agricultural and Mechanical Association *vs.* State, use of Carty.

have been to leave them to speculate upon its duration without any basis of calculation. The law entitles the mother to the services of her child during his minority only (the father being dead;) beyond this the chances of survivorship, his ability or willingness to support her, are matters of conjecture too vague to enter into an estimate of damages merely compensatory."

In the case of the *Cumberland and Penna. R. R. Co. vs. State, use of Moran*, 44 *Md.*, 283. the father sued for the death of his minor son, and in the prayers offered by both the plaintiff and defendant on the proper measure of damages, the right to recover was limited until the time the son would arrive at twenty-one years, and the Court says: "But the Court added a qualification to the third prayer which applied to all that were granted on the part of the plaintiff, and when the instructions thus qualified are read in connection with the five prayers granted on the part of the defendant, we think the jury were fully and correctly instructed as to the law of the case."

And in *Balto. & Potomac R. R. Co. vs. State, use of Stansbury*, 54 *Md.*, 648, the prayers as granted by the Court below, which prescribed the measure of damages for the loss of a son twelve years of age, limited the right of recovery to twenty-one years. This prayer was not passed upon by the Court, and the case is cited only as showing that the views of the profession as late as 1880 were in accord with the principles of *Coughlan's Case in* 24 *Md.*, 84.

And in *Balto. & Ohio R. R. Co. vs. State, use of Hauer*, 60 *Md.*, 467 *and* 468, whilst not affirming in express language the case of *Coughlan in* 24 *Md.*, yet draws the distinction between the cases.

The cases above quoted from, constitute the decisions of this Court in actions where the deceased was a minor, and from them it will be seen that the principle laid down

in *Coughlan's Case* have not yet been departed from.    The Court below, therefore, erred in rejecting the defendant's twelfth prayer, which limited the right of recovery to the period of twenty-one years, and also in admitting evidence as to the probable value of the son's services after he attained the age of twenty-one as set out in the first exception.

This is the view taken by all the authorities cited below, and no case will be found where an action has been brought for the killing of a minor that asserts a different proposition.    *Quin, Adm'r vs. Moore,* 15 *N. Y.*, 432; *City of Chicago vs. Hesings, Adm'r,* 83 *Illinois,* 207; *City of Chicago vs. Scholten,* 75 *Illinois,* 472; *Lehman, Adm'r, &c. vs. The City of Brooklyn,* 29 *Barb.*, 238; *The Borough of Birmingham vs. Dorer,* 3 *Brewster,* 71; *R., R. I. & St. L. R. R. Co. vs. Delaney,* 82 *Illinois,* 199; *Ford vs. Monroe,* 20 *Wend.*, 210; *Caldwell vs. Brown,* 53 *Penna. State,* 459; *Barley vs. Chicago & Alton R. R. Co.,* 4 *Bissel,* 430.

If there has been an emancipation by the father of the son he cannot maintain an action for the son's earnings, or maintain an action of tort founded on the loss of the son's services.    *Dennis McCarthy vs. Boston & Lowell R. R. Corporation,* 148 *Mass.*, 550; *Nightingale vs. Withington,* 15 *Mass.*, 272; *Wodell vs. Coggeshall, et al.,* 2 *Met.*, 89; *Abbott vs. Converse,* 4 *Allen,* 530, 533; *Dumain and Wife vs. Gwynne,* 10 *Allen,* 270; *The Etna,* 1 *Ware,* 462; *Stansbury vs. Bertron,* 7 *Watts & S.*, 362.

*J. Clarence Lane,* and *Henry H. Keedy,* for the appellee.

MILLER, J., delivered the opinion of the Court.

This suit was brought under the Negligence law, by a father to recover damages for the death of his minor son, caused, as it is alleged, by the negligence of the defendant.    Many actions have been brought under this statute, and they seem to be daily increasing in number.    The

legal principles which govern them are familiar, but there is always more or less difficulty in the application of these principles to particular cases.   Here the boy killed was nineteen years and seven months old, and he met his death under peculiar circumstances.

We gather from the record, that in October, 1888, the defendant held a fair in its grounds at Hagerstown. Among the exhibitions offered for the amusement of visitors were balloon ascensions and trapeze performances in the air.   The preparations for these were in a circular enclosure in a part of the fair grounds, and several large poles were planted by which the balloons could be stayed and held while they were in process of inflation and made ready to be sent up.   One of these poles, which it is alleged was insecurely fixed in the ground, fell upon the boy and killed him.   He had a ticket as keeper of stock, which admitted him to the fair grounds free of charge, but with all the privileges of an ordinary visitor.

There was the usual conflict of testimony as to negligence on the part of the defendant, and as to contributory negligence on the part of the deceased.   But on this part of the case little need be said.   We find no error warranting a reversal, in the instructions on these subjects given to the jury by the learned Judge before whom the case was tried, in·granting the plaintiff's third and fifth prayers, and the defendant's third, fourth, eighth, ninth and tenth prayers.   The defendant's fifth, sixth, and seventh prayers on the same subject were properly rejected, because those granted fully covered the law as to this branch of the case.   The multiplication of prayers substantially the same on subjects about which the law has been thoroughly well settled is a practice much to be deprecated.

But the question most earnestly argued arises upon the rulings as to the measure of damages.   The Judge was clearly right in instructing the jury that in estimat-

ing the damages they were confined to the *pecuniary* damages sustained by the plaintiff.   The authorities all agree that in suits under Lord Campbell's Act, and similar statutes in this country, pecuniary damages only can be recovered.   Nothing can be given the father as a *solatium* for the bereavement suffered by the loss of his child. The statute does not deal with the priceless value at which a father holds the life of his child, and only professes to compensate him for the pecuniary loss he may sustain by his death.   But the Court told the jury, that in estimating such damages they could allow the father what they may believe, from all the evidence in the case, will be an adequate compensation "for the loss of his son's life," and refused to instruct them that they could only give such as they may believe from the evidence will be an adequate compensation for the loss of his son's services "until he should arrive at the age of twenty-one years."   So the question is fairly raised whether in a suit by a father under this statute to recover damages for the death of a minor child, the jury should be allowed to take into account any expectation of pecuniary benefit to the plaintiff from the continuance of the child's life beyond minority.

There is conflict of authority on this subject in other States.   *Pennsylvania Railroad Company vs. Lebe*, 33 *Penn. State Rep.*, 330; *Caldwell vs. Brown*, 53 *Pa.*, 453; *Birkett vs. Knickerbocker Ice Co.*, 110 *N. Y.*, 504.   But so far as this State is concerned we think the question has been settled.   It first arose in the case of *State, use of Coughlan vs. Balto. & Ohio R. R. Co.*, 24 *Md.*, 84 ; which was decided in 1865, and is among the first, if not the first case, in which this statute was construed, it having been passed in 1852.   In that case the boy killed was between ten and twelve years of age.   He had no father living, and the suit was brought by his widowed mother, who had a large family, and kept a small grocery store.   He

was her eldest child, a smart, likely lad, who attended the store when his mother was absent, and his services were worth to her from $5 to $6 per month at the time the accident occurred. The Court below (MARTIN, J.) instructed the jury on the question of damages, that they could only give the mother such sum as they "may believe from all the evidence in the case will be an adequate compensation for the loss of her son's services from the time of his death to the period when, if he had lived, he would have attained the age of twenty-one years." This instruction was vigorously assailed by able counsel, in argument, but this Court affirmed it, and said : " To submit to a jury the value of a life without limit as to years, would have been to leave them to speculate upon its duration without any basis of calculation. The law entitles the mother to the services of her child during minority only; beyond this, the chances of survivorship, his *ability or willingness* to support her, are matters of conjecture too vague to enter into an estimate of damages merely compensatory. According to the appellant's theory, the mother and son are supposed to live on together to an indefinite age ; the one craving sympathy and support, the other rendering reverence, obedience, and protection. Such pictures of filial piety are inestimable moral examples, beautiful to contemplate, but the law has no standard by which to measure their loss." It has been suggested that by alluding to the fact that the mother was entitled by law to the services of her child during minority only, the Court intended to say that all actions under this statute must be founded on legal liability alone. But we do not so understand the Court's judgment. What the Court was enforcing and deciding was that juries ought not to be allowed in such cases to assess damages upon vague conjecture or speculation. The danger of verdicts founded on mere guess work is alluded to in a previous part of the opinion, where it is

said that "generally speaking, the influence of the Court in this class of cases should be exerted to restrain those excesses into which juries are apt to run." The legal right of the mother to the services of her minor son is referred to as furnishing a safe basis from which the jury may reasonably infer that she suffered a pecuniary loss by his death, and as affording her a reasonable expectation of pecuniary benefit from the continuance of his life during minority. But what a minor child may be able or willing to do for his father or mother after he becomes of age, when he has the right to leave the parental roof and set up for himself in life, and *before* his willingness and ability have been *tested by experience*, is, as we understand the Court to say, a matter of conjecture, too vague to enter into an estimate of damages in such a case.

Such is the meaning and effect of this decision. It is a leading one in our State and has been repeatedly followed. In *Cumb. & Penn. R. R. Co. vs. State, use of Moran,* 44 *Md.,* 283, the boy killed was old enough to be a fireman on a locomotive engine, and an instruction containing the same restriction met the approval of this Court. In *Balto. & Potomac R. R. Co. vs. State, use of Stansbury,* 54 *Md.,* 648, the boy was twelve years old, and a like instruction was granted. So in *Albert vs. State, use of Ryan,* 66 *Md.,* 325, where a minor son sued for the death of his father, his right to prospective damages was limited to his attaining his majority. In fact *Coughlan's Case* has in this State been universally recognized as having settled the law on this subject.

Nor has it been overruled or shaken by anything said or decided in *Balto. & Ohio R. R. Co. vs. State, use of Hauer, et al.,* 60 *Md.,* 449. On the contrary, it is there cited with approval and carefully distinguished from the case then under consideration. Our statute, unlike those of some of the States which give the action for the benefit of *the next of kin* generally, closely follows *Lord*

*Campbell's Act* and allows suits only for the benefit "of the wife, husband, parent and child" of the person killed. And in *Hauer's Case*, the Court, following the English decisions construing their statute, decided that "legal liability alone is not the test of the injury in respect of which damages may be recovered under the statute; but that the reasonable expectation of pecuniary advantage by the relative remaining alive may be taken into account by the jury, and damages given in respect of that expectation if it be disappointed, and the probable pecuniary loss thereby sustained." In that case a father was killed who had two adult unmarried daughters who lived with him as part of his family, were dependent upon him for support by reason of their inability to support themselves, and the father had supported and was supporting them at the time of his death. In view of these facts, the Court considered it a case falling within the rule of interpretation above stated, and allowed the jury to award damages to these adult as well as to the minor children. Following in the same line is the case of *Balto. & Ohio R. R. Co. vs. State, use of Mahone, 63 Md.*, 135. The person killed was a mother who had made her permanent home with a married daughter, to whom she rendered services by attending to housework and looking after the children while the daughter was away at work, and thus gave her considerable assistance, which she had rendered and was rendering when she was killed. The Court allowed the jury to consider the pecuniary value of these services to the daughter, and to award her damages for the loss of them. In each of the English decisions cited in both these cases the adult son who was killed had given and was giving assistance of a definite pecuniary amount to his parents, and this fact was relied on by the Court as the evidence which showed that the father had a reasonable expectation of pecuniary benefit from the continuance of his son's life. *Dalton*

*vs. South-Eastern Railway Co.*, 93 *Eng. C. L. Rep.*, 296 ; *Franklin vs. South-Eastern Railway Co.*, 3 *Hurls. & Norm.*, 211. Of like character and to the same effect is *Penn. Railroad Co. vs. Adams*, 55 *Penn.*, 499, and many other similar cases might be cited. In these cases the son after attaining age had manifested his willingness to assist his parents by *actually doing so,* and when that fact is proved we can understand how the latter may reasonably expect further assistance if the son lives. But whether a minor son *will do so* after he comes of age is, as it seems to us, a matter of vague conjecture, which can furnish no reasonable foundation for a verdict.

In the present case the father testified that he had *emancipated* his son two years before he was killed; that he was working for himself and had voluntarily given each year to witness since his emancipation $75 or $80 of his wages; that he was a farm hand and earned from $110 to $120 a year, and was living with witness, except when at labor. But the only effect of this emancipation as it is called, was to protect, so long as it continued, the employer in paying his wages to the minor himself. The father could revoke the privilege at any time he chose, and collect and receive his entire wages.

Again, in answer to the direct question, "Did you have any reasonable expectation that he would do this" (that is give you $75 or $80 a year) "after he became of age?" The father testified that "the deceased had said that after he got of age he would help to *fix up the property,* and that he never said any thing *about getting married;*" and the Court, against the objection of the defendant, allowed this testimony to go to the jury. But a vague declaration or promise like this, made by a minor, has no probative force whatever, and, in our opinion, this evidence is altogether too slight and insufficient to enable a jury to find from it a ground for the reasonable expectation which the law requires. Nor do we find any evidence in

this record which can have the effect of taking this case out of the rule laid down by our predecessors in *Coughlan's Case.* That case was, in our judgment, well decided.

We have considered the case very carefully, and it follows from what we have said that, while there is no error justifying a reversal in the other rulings of the Court, there is error in the modification made by the Court to the defendant's eleventh prayer, in rejecting its twelfth prayer, in granting the plaintiff's first and fourth prayers, and in the ruling relating to the admissibility of evidence contained in the second exception, and for these errors the judgment must be reversed, and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 11th June, 1889.)