STATE, Use of Parr ET UX. *v.* BOARD OF COUNTY
COMMISSIONERS OF PRINCE GEORGE'S COUNTY
ET AL.

[No. 128, October Term, 1954.]

94

*Decided April 20, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Earl J. Lombard,* with whom was *John H. McAllister* on the brief, for the appellants.

*William L. Kahler* for the Board of County Commissioners of Prince George's County.

*Jerrold V. Powers*, with whom were *Lansdale G. Sasscer, Jr.*, and *Sasscer, Clagett & Powers* on the brief, for the Board of Education of Prince George's County.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment entered on a directed verdict in favor of the defendants, appellees here.

Under the provisions of Code, 1951, Article 67, entitled "Negligence Causing Death", which more or less follows the English statute, 9th and 10th Victoria, Chapter 93, known as Lord Campbell's Act, suit was brought on a third amended declaration by the State of Maryland, for the use of Lee H. Parr and Ivy V. Parr, his wife, appellants, against The Board of County Commissioners of Prince George's County, Maryland, a body corporate, (County Commissioners), and the Board of Education of Prince George's County, a body corporate, (Board of Education), for damages sustained by the equitable plaintiffs on account of the alleged negligence of the defendants, resulting in the death of their infant child, Nancy Lee Parr.

The declaration alleged that on or about February 16, 1953, Nancy Lee Parr was fatally injured while being transported to school on a Prince George's County school bus. This bus was owned by the Board of Education and operated by its agent and employee, Roscoe E. Collins, as driver and employee of said Board. Her death was caused by the school bus striking a large hole in the 6000 block of Suitland Road in Morningside, Prince George's County, Maryland, with the result that she was thrown against the emergency door, which door was improperly latched due to the negligence of the said Roscoe E. Collins, with the further result that the said Nancy fell through said door as it opened, from which fall she received fatal injuries and died the same day, without any negligence or want of care on her part. The emergency door was not controlled by a safety device as required by Code, 1951, Article 66½, Section 228. This failure to meet the safety requirements, therein required,

resulted from the deliberate and wilful negligence and carelessness of the Board of Education. As a result of the wrongful death of the said infant, the equitable plaintiffs will be deprived of the support and services of said infant and in addition have also suffered a loss of money expended for the care and maintenance of said infant prior to her wrongful death. The large hole and defective condition in the Suitland Road, aforesaid, which was a directly contributing cause of the death of the said infant, was present for several months. The hole became larger and more hazardous each day. The presence of said hole and defective condition was known or should have been known to the County Commissioners, their agents and employees. The existence of the hole was a result of negligence and carelessness of the County Commissioners, their agents and employees. Prior to the institution of the suit written notice was given the said County Commissioners and Board of Education of the claim herein asserted.

After the plaintiffs produced their testimony the trial judge directed a verdict for the defendants and from the judgment entered on that verdict the appellants appeal. As the demurrer prayers of the appellees were granted, taking the case from the jury, we will review the evidence in a manner most favorable to the appellants.

On the morning of February 16, 1953, Nancy Lee Parr, the deceased child, was designated as a patrol on the school bus going to the school. Her duties were to stand in the rear of the bus to watch the back door and to watch the children to see that they did not get "rowdy" and disturb the driver while he was driving the bus. Ronald Charles Ellis, a thirteen year old school boy, testified that he got on the bus that morning before it started and the back door was closed. He said that he was sitting on the last seat in the rear of the bus next to the aisle and Nancy Parr was standing right next to him. When the bus came between Collins' Esso Station and Skyline Market it hit a deep hole in the road. The back of the bus bounced up. The rear door flew open

and Nancy fell in the street. Ronald called to the bus driver and told him to stop. When the bus stopped the driver got out to see what had happened to Nancy. Just before the bus hit the hole Nancy was standing up against the back of the door with her hands on the seat. When the door flew open she tried to grab for the door but missed it. Ronald further said that when he looked out of the back of the bus he saw a big hole in the road about two feet from the back of the door. The door did not open at any time before the bus hit the hole and Nancy fell out. The hole was about two or three inches deep and toward the center of the road in the lane in which the bus was traveling. There were other holes in the vicinity covered with tar. When further questioned as to the depth of the hole, he replied: "I wouldn't say because I was looking down at it." He further said that when the bus came to a stop, Nancy was lying in the road behind the hole. When she hit the ground she rolled.

Nancy Ellis, a twelve year old school girl, testified that she was sitting on the last seat in the rear of the bus next to the aisle and opposite Ronald Ellis. She got on the bus before it started and at that time the back door was closed. She did not know whether it was locked. She was in the bus the entire trip from its starting point. Nancy Parr was standing right next to her looking toward the front of the bus. Suddenly the door flew open. She turned around and Nancy Parr was grabbing for the bars. She did not notice any bump. She did not know what caused the door to fly open. She did not see Nancy Parr when the door flew open but she saw her fall. Nancy Parr was leaning against the door earlier in the trip but she did not know whether or not she was leaning against it when it flew open. She further testified that during the weekend before Nancy Parr's death, she saw boys playing on and inside the bus, parked at Collins' filling station.

Mrs. Lucille Dudley testified that she was waiting for the W. M. & A. bus in front of Collins' filling station at

the bus stop. She was watching the school bus as it went by. She turned her head away from the school bus for a minute. When she looked back again it was going on down the road and Nancy was lying on the street. She was a block away from Nancy at that time. She said the bus "just went bumping along in a normal, routine fashion for that street. The road is very bumpy there."

Mr. Lee H. Parr, the father of the deceased child and one of the equitable plaintiffs, testified that after the accident, Mr. Collins showed him the approximate place on the road where the accident happened. This spot was approximately twelve to fifteen feet from a hole in the center of the road. A dip in the road had been cut out for more than a year and had been half filled up. The hole was from six to eight inches deep and reached more than half way across the road. Water would stand in the holes until "splashed" away. Before the accident he filled the hole "nearly up" with dirt. The County men would not further repair it and put macadam on it because it was not deep enough. He called this condition to the attention of the County officials several times. On the day of one complaint they patched up some of the holes, but not the particular one. He said at Randoph Road there was a mass of patches and holes. When those holes became deep, patches would be put on them which would raise them higher and make the road much worse. It is not shown where Randoph Road is located in reference to the place where the accident happened. He further testified that he had driven the bus once or twice, previous to the accident, for Mr. Collins and had swept it out on occasions. He testified that the day after the accident he examined the lock on the bus door. He said: "I tried the door handle, and it seemed that the door was tight shut and over on the right-hand side, well, the handle was in a locked position, down a little further, almost to the center. It was in what they call a safety position. At that position, why, the door could move just a fraction, like it hit a second latch, or some-

thing. Now, from there you could take a sheet of paper and touch that handle, and it would fall into the open position. * * * When this handle was up here (indicating) in the locked position, the end of this handle, on the offset, it is not in the well, it is over the edge of it, where anything could hit it and probably knock it loose. * * * Q. How much pressure was required, Mr. Parr, to change position of that lever from one of those positions to the other? A. Well, in this position here, well, just take ahold of it and turn it down to this position, and when it gets down to this position you can take your finger and it would fall down to the open position. Q. You mean that if the handle was hanging straight down that the door would open? A. I never knew it to close, but it seemed to me that the door would open right about here (indicating). Q. That would be slightly beyond the completely straight-up-and-down position. A. Yes. * * * Q. As to this particular latch, Mr. Parr, were there any protective devices, other than the handle itself, in the three positions? A. No, that is the only thing that was there. It was right in the open, wasn't even behind the seat or anything. * * * It wasn't behind the seat or anything; it was right in the open of the aisle, between the seats." He said that even a piece of cardboard or a coattail could knock the handle of the lock into the open position. There was no guard of any kind over the handle. The latch had to be pulled shut "as hard as you could pull it."

It was stipulated and agreed between the parties that Nancy Lee Parr died as a result of the injuries which she received when she fell from a Prince George's County school bus on or about February 16, 1953; that said school bus was owned by the Board of Education and was at that time operated by Roscoe E. Collins, as agent and employee of said Board of Education; and that the 6000 block of Suitland Road was and for several months prior to February 16, 1953, a county road for the maintenance and care of which the County Commissioners of Prince George's County were responsible. No governmental

immunity is claimed by any of the parties here.

It has been uniformly held in this State that the County Commissioners, having control of the public roads, are charged with the duty of keeping them in good repair and are supplied with the means of discharging that duty and to meet that liability. They are liable for injuries caused by any defect in a public road due to their negligence. *Richardson v. County Commissioners of Kent Co.,* 120 Md. 153, 155, 156, 87 A. 747, and cases cited; *Willis v. Baltimore County,* 173 Md. 28, 31, 194 A. 584. While this is the general rule there must be some limit to such liability. They cannot be held responsible for injuries caused by every irregularity or difference in grade of the streets. They are only required to use reasonable care and diligence. *Lynch v. Baltimore,* 169 Md. 623, 630, 631, 182 A. 582; *East Coast Lines v. Baltimore,* 190 Md. 256, 58 A. 2d 290; *Leonard v. Lee,* 191 Md. 426, 432, 433, 62 A. 2d 259. It was said by Judge Offutt in *Cumberland v. Turney,* 177 Md. 297, 9 A. 2d 561, in qualifying the duty to keep public streets and highways in a reasonably safe condition, at pages 308 and 309: "But in *Hagerstown v. Crowl, supra,* [128 Md. 556, 97 A. 544], there is an intimation that, although the municipality, where it is under a duty to act, will be subject to a liability if it fails to act at all, or does act but acts negligently, it will not be liable if it does make an honest effort to perform its duty, but through some error in judgment fails to do all that it should have done, or does something which it is required to do in an inadequate or imperfect way. * * * The statement so often repeated in the cases that it is the duty of the municipality to keep its public highways safe for travel is subject therefore to the qualification that the duty is discharged if the municipality exercises ordinary and reasonable care in its performance, for it is not an insurer of the safety of persons traveling thereon even though they are injured while in the exercise of ordinary care. *Baltimore v. Thompson, supra,* [171 Md. 460, 189 A. 822]; *Elliott on*

*Roads and Streets,* sec. 793; *Birckhead v. Baltimore,* 174 Md. 32, 197 A. 615."

Of course, a demurrer prayer should not be granted if there is any testimony of sufficient probative force and any inference of fact fairly deducible therefrom to enable an ordinary intelligent mind to draw a rational conclusion therefrom in support of the right of the plaintiff to recover. If there is any such evidence competent, pertinent and coming from a legal source, however slight, legally sufficient to prove the case of the plaintiff, the demurrer prayer should be refused. *State v. Wooleyhan Transport Co.,* 192 Md. 686, 692, 65 A. 2d 321, and cases cited.

The only testimony as to the hole in the road is that of Ronald Ellis and Mr. Parr, one of the equitable plaintiffs. Ronald said in effect that it was about two or three inches deep, although he later admitted that, as he was looking down on the hole, he could not tell how deep it was. Mr. Parr's testimony as to the hole in the road is based entirely on the information which he received from Mr. Collins as to the location of the accident. Mr. Parr said that Mr. Collins showed him "the approximate place where it happened." With the bus moving at the time of the accident, and Mr. Collins not knowing of the fall from the bus until advised by the children, we do not think that this testimony was definite enough to identify the hole or holes described by Mr. Parr with the hole which it is claimed the bus struck before the door flew open. The testimony is very indefinite as to just what part of the road the complaint of Mr. Parr was directed, and as to whether the Commissioners had notice of the bad condition where the accident actually happened. Furthermore, it is admitted by Mr. Parr that, after he complained at the office of the County Commissioners about the condition of the road in that general locality, they did patch the road but did not fill the holes up entirely. They did, therefore, make an honest effort to perform their duty. We are not of opinion that they failed to exercise ordinary and reasonable care in per-

forming their duty. To submit to the jury the liability of the County Commissioners would allow them to indulge merely in speculation. They are not justified in inferring the existence of facts from mere possibility. *Finney v. Frevel*, 183 Md. 355, 363, 37 A. 2d 923, and cases there cited. We are, therefore, of opinion that the demurrer prayer as to the County Commissioners was properly granted.

We take a contrary view as to the Board of Education. The declaration in this case places liability on failure of the Board of Education to comply with Code, 1951, Article 66½, Section 228, *supra*. This section provides: "(Safety Devices on School Buses.) Every school bus operating in this State shall have a door in or near the rear of the bus readily accessible for the discharging of pupils in case of emergency. The rear bumper shall be so placed that it will not interfere with the egress of the passengers using the emergency door. The door shall be controlled by a safety device which in case of emergency may easily be operated independently of the driver and the device shall be protected against accidental or unauthorized release." The bus and occupants were under the management and control of the Board of Education at the time of the accident, because the Board evidently had the power to appoint a patrol, which power they exercised. This section particularly provides against accidental or unauthorized release. The door undoubtedly opened. Ronald Ellis and Nancy Ellis, who were within reaching distance of the handle of this door, apparently did not see anyone release the door and it is certainly beyond speculation that no one with authority did release this door while the bus was in motion. Nancy Parr, the patrol, stood with her back against the door and her hands on the seat. This would prevent anyone from intentionally opening the door. The statute seeks to prevent accidental or unauthorized release of the door. There was testimony from Mr. Parr, one of the equitable plaintiffs, who had driven the school bus and swept it out on previous occasions, and for the purposes of the

demurrer this testimony must be taken as true, that, if a sheet of paper or a coattail touched the handle, it would fall into an open position. It would certainly not be beyond speculation for the jury to find that this door became open through "accidental or unauthorized release." Even though there might have been a hole in the road which jarred the bus, under the statute it is evident that the safety device should have been protected against such accidental release as striking holes in the road.

Of course, the mere violation of a statute does not support an action for damages. However, it is also well settled that where such a violation is the proximate cause of the injury a right of action does accrue to the party injured. *Hopper McGaw & Co. v. Kelly,* 145 Md. 161, 169, 125 A. 779; *Kelly v. Huber Baking Co.,* 145 Md. 321, 334, 125 A. 782; *Cumberland & Westernport Transit Co. v. Metz,* 158 Md. 424, 438, 149 A. 4; *Brown v. Bendix,* 187 Md. 613, 51 A. 2d 292; *Gosnell v. Balto. & Ohio R. R. Co.,* 189 Md. 677, 687, 57 A. 2d 322.

The trial judge, in granting the demurrers, out of the presence of the jury, stated to the attorneys: "The case seems to be a little similar to what might be called *res ipsa loquitur*. But the declaration is not founded on that theory, * * *." We do not think the pleadings determine that question. It was said by Judge Markell in *Livingston v. Stewart & Co.,* 194 Md. 155, at pages 161 and 162, 69 A. 2d 900: *"In Bohlen v. Glenn L. Martin Co.,* 193 Md. 454, 461, 67 A. 2d 251, 254, we said: 'The doctrine *res ipsa loquitur* is not a rule of pleading. It relates to burden of proof and sufficiency of evidence. When it is applicable, for example, between passenger and carrier in case of collision between two trains of the same railroad, the fact of the collision is evidence of negligence in the operation of the trains. The declaration must allege negligent operation causing the collision, not merely the evidence: to wit, the collision, from which negligent operation may be inferred.' The first two sentences quoted state what seems to be universally recognized; the last two at least state Maryland law of pleading. Neither the

opinions of this court nor the statutory forms of declarations (*supra*) make any difference in pleading between *res ipsa loquitur* cases and other cases. In other jurisdictions many cases (most of them in a few jurisdictions) have involved questions whether or to what extent the application of the doctrine *res ipsa loquitur* is affected by plaintiff's pleading, particularly whether by making 'specific' allegations of negligence, with or without 'general' allegations, plaintiff may lose or restrict his right to rely on the doctrine. * * * Apparently cases which hold that this right may be so lost or restricted have been decided in jurisdictions where code pleading or notice pleading has clouded or obliterated the distinctions between facts and evidence and between pleading and discovery, as they are recognized in Maryland. Commentators are inclined to disapprove on principle cases so holding; they also find the decisions in different jurisdictions or even in the same jurisdictions, in hopeless conflict. No such question is now before us and we have no disposition to lay a foundation for such questions in Maryland." It was stated by Judge Delaplaine in *Potts v. Armour & Co.*, 183 Md. 483, 488, 39 A. 2d 552: "We spcifically hold that where an injury has been caused by an apparatus in the control of the defendant and of such a character that ordinarily the injury would not have been inflicted if the defendant had exercised reasonable care in its construction, inspection and use, a presumption arises, in the absence of an explanation which the jury accepts, that the injury would not have been inflicted if the defendant had exercised reasonable care. *J. C. Penny Co. v. Evans*, 172 Miss. 900, 160 So. 779; *Wilson v. Colonial Air Transport*, 278 Mass. 420, 180 N. E. 212, 83 A. L. R. 329. If the trial court finds that conflicting inferences may be drawn, choice of inference must be made by the jury. *George Foltis, Inc. v. City of New York*, 287 N. Y. 108, 38 N. E. 2d 455." It was said in *Frenkil v. Johnson*, 175 Md. 592, 605, 3 A. 2d 479, in reference to *res ipsa loquitur:* "Nor is the rule applicable if it appears that the injury may have been caused

by the independent negligence of the defendant or a third person, since, in such a situation, the plaintiff is not permitted to recover until he excludes the independent neglect of the third party as the efficient and proximate cause of the injury. Should, however, the cause of the injury be attributable to one or more things or acts for all of which the defendant was responsible, the plaintiff may recover without showing which particular one was the cause of the injury. *Wilson & Son v. Blaustein,* 144 Md. 289, 292, 293, 124 A. 886." Although there is an allegation in the declaration here that the hole in the road was a directly contributing cause to the death, the action against the Board of Education is founded on the statute, Article 66½, Section 228, *supra.* This statute specifically states that the safety device shall be protected against accidental release. If the door opened because of striking the hole in the road, that was an accidental release. From all the circumstances in the case we think an inference can be drawn that the cause of the accident was in the control of the Board of Education, and could have been prevented by reasonable care on its part. *Lee v. Housing Auth. of Baltimore,* 203 Md. 453.

During the trial of the case, over the objection of the appellees, Officer Thomas A. Rogato, of the Prince George's County Police Force, on direct examination was allowed to testify that on the same day as the accident he questioned Mr. Collins at the Providence Hospital in Washington, D. C., in reference to when he last checked the emergency door on the bus. An objection was made to that question, which was overruled, and he replied that Mr. Collins told him that the last time he checked that door was on Friday, the 13th of February. Although the appellees took no appeal, as the case is to be retried, we think this question is properly before us. *Benson v. Atwood,* 13 Md. 20, 57; *Pope v. Whitridge,* 110 Md. 468, 475, 73 A. 281; *Spence v. Steel Co.,* 173 Md. 539, 546, 197 A. 302. The appellees rely on the fact that Collins, employed as a bus driver, was not such an agent of the Board of Education as would have authority

to bind it by his subsequent statement, and that this statement forms no part of the *res gestae*. We think this testimony was not admissible and that the objection should have been sustained. In *Dietrich v. Hall Spgs. R.R. Co.*, 58 Md. 347, the plaintiff endeavored to offer in his direct evidence certain declarations made by the driver of a horse car about half an hour after the injury. This Court there held that this testimony was properly excluded because it formed no part of the *res gestae* and that the power of the driver to make such declarations to affect his principal is not to be inferred from his single employment to drive and conduct the car. The following was there said at pages 356 and 357: "* * * an act done by an agent cannot be varied, qualified, or explained, either by declarations or admissions made by him, which amount to no more than a mere narrative of a past occurrence, or by an isolated conversation held, or an isolated act done, at a subsequent time. 1 *Tayl. Ev.* Sec. 526. Here the declarations of the driver offered did not accompany the act complained of, but were made subsequently, in an isolated conversation, and which amounted to no more than a mere narrative of a past occurrence. They were therefore clearly inadmissible; and the cases all so hold, including our own. * * * If any fact, material to the interest of either party, rests in the knowledge of an agent, it is to be proved by his testimony, and not by his mere assertion; and in this case, instead of offering the unsworn declarations of the driver of the car, he should have been called as a witness." See also *Reinhart Construction Co. v. Baltimore*, 157 Md. 420, 425, 146 A. 577; *Spence v. Steel Co., supra*, 547; *Jones on Evidence*, (4th Ed.), Vol 1, Sec. 267; *Wigmore on Evidence*, Vol. IV, Sec. 1078; and Vol. VI, Sec. 1769. This is not a case like *Shirks Motor Express v. Oxenham*, 204 Md. 626, 106 A. 2d 46, where it was held that a statement made by the helper on a truck not more than ten minutes after the accident happened was admissible as part of the *res gestae*.

The appellants on direct examination asked Mr. Parr what it cost him in money to rear Nancy to the age at which she was killed. An objection to that question by the appellees was sustained by the trial judge. Appellants claim error. In this State, in this class of case, the damages to be allowed to the parents should be an adequate compensation for the loss of their daughter's services from the time of her death to the period when, had she lived, she would have attained majority. *State, Use of Coughlin v. Balto. & Ohio R. R. Co.*, (1866), 24 Md. 84, 107; *Balto. & Ohio R. R. Co. v. State, Use of Hauer*, (1883), 60 Md. 449, 467; *Agr. & Mech. Asso. of Washington Co. v. State, Use of Carty*, 71 Md. 86, 100, 18 A. 37; Code, 1951, Article 67, Section 4. The objection was properly sustained.

Mr. Parr on direct examination was asked whether he had any specific plans for Nancy's future. The appellees objected to this question and the objection in our opinion was correctly sustained. We have been referred to and have found no case which would permit such a question to be asked in determining the amount of damages. An answer to such a question would be pure speculation, *Western Union Tel. Co. v. Lehman*, 106 Md. 318, 331, 67 A. 241, and does not seem to come within the rule laid down by the authorities cited in the preceding paragraph.

During Mr. Parr's testimony the trial judge refused to permit him to answer certain questions concerning other types of latches which were available for use on emergency doors in school buses. The appellants assign this as error. From the manner in which these questions were framed, we are of opinion that the objections were properly sustained. If the objections had been overruled, the witness would have been allowed to testify as to locking devices available at the time of the trial which was twenty months after the accident. The questions did not confine his testimony to locks available at the time of the accident. That more efficient locking devices were available at the time of the trial could

not affect the responsibility of the Board of Education at the time of the accident. *Ziehm v. United Electric Light & Power Co.,* 104 Md. 48, 61, 64 A. 61. In *Long v. Joestlein,* 193 Md. 211, 66 A. 2d 407, an action was brought to recover personal injuries when plaintiff fell on a stairway in defendant's home. It was said in that case at page 220: "Plaintiff also complained because she was not allowed to introduce testimony that defendant painted the landing white after her accident. The fact that defendant painted the landing after the accident is not admissible in evidence as an admission of liability. Such testimony would be immaterial, because such action by defendant could not affect his liability at the time of the accident. *Ziehm v. United Electric Light & Power Co.,* 104 Md. 48, 61, 64 A. 61; *American Paving & Contracting Co. v. Davis,* 127 Md. 477, 483, 96 A. 623; *State, for Use of Bahner v. Consolidated Gas, Electric Light & Power Co.,* 159 Md. 138, 144, 150 A. 452."

> *Judgment as to the County Commissioners affirmed. Judgment as to the Board of Education reversed and case remanded for further proceedings. One-half of the costs to be paid by the appellants and one-half by the Board of Education.*