Norma K. ALDEN, Individually and as Executrix of the Estate of Robert P. Alden, Deceased, et al.

v.

Lawrence MARYANOV, M. D., et al.

Civ. A. No. N–74–1324.

United States District Court,
D. Maryland.

Jan. 6, 1976.

Sidney S. Sachs, Harlan L. Weiss and Sachs & Greenebaum, Chevy Chase, Md., and Burnham H. Greeley, Honolulu, Hawaii, for plaintiffs.

John H. Mudd, Robert E. Scott, Jr., and Semmes, Bowen & Semmes, Baltimore, Md., for defendant Maryanov.

Hugh E. Donovan and E. Gwinn Miller, Rockville, Md., for defendant Bond.

E. Gwinn Miller, Rockville, Md., for defendant Dietrich.

NORTHROP, Chief Judge.

Robert P. Alden died in Cambridge, Maryland on October 29, 1972. His widow and surviving natural children have brought this wrongful death and survival action against three doctors who treated Mr. Alden just prior to his death. Mrs. Alden and the three children (hereinafter, for convenience, referred to individually by their first names (Sue, Gary, and Judith) and collectively as "plaintiff-offspring") seek $2,500,000 in damages on the wrongful death claim. As executrix of Mr. Alden's estate, Mrs. Alden seeks $500,000 in damages on the survival claim.

The action now comes before this Court on defendants' motions for summary judgment against Gary and Judith and defendants' motions for partial summary judgment against Sue. Defendants advise this Court that the answers to inter-

rogatories reveal that at the time of Mr. Alden's death: (1) Gary was 23 years of age, was married, and was not receiving any financial support from his father; (2) Judith was 26 years of age, was married, and was not receiving any financial support from her father; and (3) Sue was 19 years of age and was living with her father and mother. Sue was married on July 28, 1973. Defendants assert that under Maryland's Wrongful Death Statute children may not recover solatium (compensation for injury to the feelings), that minor children can recover damages only for "pecuniary loss" until the age of marriage or majority, and that children who are married or past the age of majority at the time of their parent's death cannot recover damages of any sort. Defendants conclude, therefore, that only Sue among the three plaintiff-offspring may recover any damages and that Sue's potential recovery is by law more limited than that requested in her complaint.

The complaint states that the four plaintiffs have suffered and will suffer "pecuniary loss, mental anguish, emotional pain and suffering, and have been and will be deprived of the support, society, companionship, comfort, protection, marital and parental care, attention, advice and counsel reasonably expected to be received from Robert P. Alden." Plaintiffs, of course, take a different view of Maryland law than do defendants and conclude that they are each entitled to the types of damages requested.

The section of the Maryland Wrongful Death Statute which holds the key to the present inquiry read at the time of Mr. Alden's death in 1972 as follows:

(a) Every such action shall be for the benefit of the wife, husband, parent and child of the person whose death shall have been so caused or if there be no such person or persons entitled then any person related to the deceased by blood or marriage, who, as a matter of fact, was wholly dependent upon the person whose death shall have been so caused. . . . [A]nd in every such action the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought, and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the above-mentioned parties, in such shares as the jury by their verdict shall find and direct; provided, that no more than one action shall lie for and in respect of the same subject matter of complaint; and that every such action shall be commenced within two years after the death of the deceased person.

(b) In the case of the death of a spouse or a minor child, the damages awarded by a jury in such cases shall not be limited or restricted to the "pecuniary loss" or "pecuniary benefit" rule, but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable.

Md.Ann.Code art. 67, § 4 (1970).

■ Part (b) of § 4, which provides generally for what this Court is now for convenience referring to as "solatium," was added to the statute in 1969. Prior to that time, the potential recovery of a plaintiff under the case law was aptly described by the following excerpt from *Wittel v. Baker,* 10 Md.App. 531, 533–34, 272 A.2d 57, 58 (1970):

. . . This provision as to damages was also contained in the statute of 9 and 10 Vic., ch. 93, known as Lord Campbell's Act, enacted by the English Parliament in 1846. It did not prescribe in terms on what principle the damages were to be assessed. However, when the question of damages first reached our Court of Appeals in *B. & O. R. R. Co. v. State, to use of Mahone,* 63 Md. 135, the Court found it to be settled law under English decisions that damages are not to

be given as a solatium for grief or mental suffering but must be founded on pecuniary loss, citing *Blake v. R. R. Co.,* 18 Q.B. 93 and *Frankline v. R. R. Co.,* 3 Hurl. and Nor. 211. Thus damages were based on the pecuniary benefit the person injured by the wrongful death had in the life of the deceased and the claim must be founded on a pecuniary loss, actual or expected. "The right to maintain the action is therefore based on the pecuniary interest of the plaintiff in the life of the person killed, and the value of such interest is the measure by which damages are to be allowed." *B. & O. R. R. Co. v. State, to use of Mahone, supra,* [63 Md.] at 146. The Court of Appeals consistently adhered to this construction. As recently as 23 January 1969 when it decided *Hutzell v. Boyer,* 252 Md. 227 [249 A.2d 449] it quoted with approval *United States v. Guyer,* 218 F.2d 266, 268 (4th Cir. 1954): "Under the law of Maryland the measure of recovery for wrongful death * * * is the present value of the pecuniary benefit which the [survivors] might reasonably have expected to receive from [the deceased] if he had not been killed." And see *State ex rel. Parr v. Board of County Commissioners,* 207 Md. 91 [113 A.2d 397] *Bowman v. Wooleyhan Transport Company,* 192 Md. 686 [65 A.2d 321].

.   .   .

*See also Cincotta v. United States,* 362 F.Supp. 386, 407 (D.Md.1973) (Northrop, J.).

Defendants now ask this Court to find that the addition of Part (b) in 1969 is of no benefit to any of the plaintiff-offspring in this case because the language literally refers only to the "death of a spouse or a minor child." Plaintiffs contend, however, that these words could not have been intended by the Maryland Legislature to mean what they literally say because the list of damages which follows the words includes "parental care" which can logically only be lost upon the death of a parent. Appealing though plaintiffs' argument may be, the courts of Maryland have decided not to accept it. In *Wittel v. Baker, supra,* at 535–36, 272 A.2d at 59, the Court of Special Appeals made a thorough analysis (in dictum) of the ambiguities raised by Part (b); and after quoting the preamble to the act which brought Part (b) into the statute in 1969, the Court concluded:

.   .   . [D]espite its pronouncements in the preamble to ch. 352, it is patent that the legislature did not feel that the pecuniary loss rule was utterly wrong, for it superseded the rule only in the case of the death of a spouse or a minor child. We observe that if the death which was the cause of action in *B. & O. R. R. v. State, to use of Mahone, supra,* had occurred after 1 July 1969 instead of 1 August 1883, the measure of damages would be the same as it was when the case was decided in 1885 because the person wrongfully killed was the mother of the claimant, and such a deceased parent is not within the ambit of § 4(b). The legislature had before it whether to make the provisions of § 4(b) applicable to every wrongful death action but did not do so. The bill as written read: "In every such action, including the death of a minor child, * * * *" but was changed before passage to read: "In the case of the death of a spouse or a minor child, * * * ."

This analysis was reaffirmed and expanded in *Barrett v. Charlson,* 18 Md. App. 80, 97 n. 10, 305 A.2d 166 (1972) (dictum). This Court has previously followed the *Wittel* analysis, *Cincotta v. United States, supra,* and nothing has occurred in the interim since the *Cincotta* decision that would indicate a different course of action. Indeed, when § 4(b) was recodified in 1973, the language was not changed, Md.Ann.Code, Cts. & Jud.Proc.Art., § 3–904(d) (1974), and the Revisor's Note explained:

The staff is aware that the proposed draft perpetuates what appears to be a defect in the existing statute. Section 4(b) of Article 67 applies only to the case of the death of a spouse or minor child. The death of a parent,

especially a widow, widower, or divorced parent, who could not be called a spouse, is not in terms covered by the subsection, although one of the elements of damage is stated to be "parental care" and the statute also refers to counsel, training, guidance, etc., which are more applicable to the death of a parent than to anything else.

However the commission is cognizant of the fact that this law was adopted in its present form by ch. 352, Acts of 1969, and after a previous effort to broaden the language was made unsuccessfully in 1968. The present language is of recent vintage and apparently the result of legislative compromise. Thus, despite any logical defects it may contain, the commission believes that change is a matter for the legislature.

Thus, this Court is constrained to rule that plaintiff-offspring's request for solatium (as defined in Article 67, § 4(b)) is precluded by Maryland law and that summary judgment should be granted to defendants on this issue.

■ Notwithstanding this conclusion, the question remains as to what extent, if any, plaintiff-offspring can recover "pecuniary loss" under Part (a) of Article 67, § 4. It is clear that on its face Part (a) says nothing about the age of the child who may recover. However, the courts of Maryland have interpreted the statute so as to incorporate certain age guidelines for the determination of a child's recovery.

For a child who is an unmarried minor at the time of death of the parent, a jury can "estimate" the prospective "pecuniary loss" up to the time of that child's marriage or majority. *Baltimore & Ohio R. R. Co. v. Plews,* 262 Md. 442, 467, 278 A.2d 287 (1971); *Baltimore Transit Co. v. State,* 194 Md. 421, 436–37, 71 A.2d 442 (1950); *Baltimore & Ohio R. R. Co. v. State,* 60 Md. 449, 466–67 (1883); *Cincotta v. United States, supra; Jennings v. United States,* 178 F.Supp. 516, 530 (D.Md.1959). Defendants contend that this "rule" implies that an adult child can recover no pecuniary loss

at all. This Court's review of Maryland cases, however, reveals that this is faulty reasoning.

Even defendants admit that an "exception" to their proposed rule, that an adult child can recover nothing, exists for the case where an adult child is dependent on the adult who dies. While defendants would strictly limit this "exception" to those instances in which the adult child is "wholly dependent" on the deceased adult, apparently in the same sense that other relatives must be "wholly dependent" to be able to recover at all under the literal language of the statute, it is clear that no such strict limitation has been imposed. The very case cited by defendants, *Standard Oil Co. of New Jersey v. Sheppard,* 80 U.S.App.D.C. 71, 148 F.2d 363 (D.C.D.C.1945) (interpreting Maryland law), only talks of the adult child being "dependent," not "wholly dependent." In *State v. Wooleyhan Transport Co.,* 192 Md. 686, 695, 65 A.2d 321, 325 (1948), the Court of Appeals of Maryland sustained a trial court's granting of a demurrer to a claim of an adult woman for the death of her mother, but it explained the law on an adult child's recovery as follows:

> In this case we find that the mother did not live in the home with her daughter, as in the case of *B. & O. v. Mahone, supra,* but was employed a great part of the time elsewhere. The services rendered were those naturally rendered by an affectionate employed mother to her daughter. . . . The daughter sustained no pecuniary benefit by reason of her mother's services . . . . The daughter here had no actual *pecuniary loss* and no right to expect any pecuniary benefit from the continuance of her mother's life. [emphasis added]

Thus, it clearly appears that, even though "pecuniary loss" will be difficult to show for an adult child whose parent has died, it is nevertheless the usual "pecuniary loss" rule which applies rather than a stricter requirement that the adult child be wholly dependent. Cases reviewed at length by the *Wooleyhan*

court confirm this conclusion. *See Elder v. Baltimore & Ohio R. R. Co.,* 126 Md. 497, 504–05, 95 A. 65 (1915) (adult child must show "pecuniary interest"); *Baltimore & Ohio R. R. Co. v. Maryland,* 63 Md. 135, 145–47 (1885) (adult child must provide "proof" of "pecuniary loss").

Moreover, it is also clear that the "rule" from which defendants begin their reasoning, that a jury can "estimate" a minor child's damages up to the age of marriage or majority, is not strictly a rule at all. It is more in the nature of a presumption that dependency and financial support continue up to a certain point. The presumption enables the jury to "estimate" the damages. For the period after marriage or majority, however, a jury can award prospective damages only if the claimant can show, without the benefit of any presumptions of parental support, potential pecuniary loss. *See Cincotta v. United States, supra,* at 410.

In summary, in a wrongful death action in Maryland based on the law as it existed in 1972, a child who is a minor at the time of a parent's death can recover damages for a presumed loss of parental support until the age of marriage or majority and for any other pecuniary loss that can be shown for the period before and after marriage or majority. A child who is an adult child at the time of the parent's death can recover damages for actual or potential pecuniary loss which can be demonstrated. No child may recover solatium as described in Md.Ann.Code art. 67, § 4(b) (1970).

In the instant case, only Sue was a minor at the time of Mr. Alden's death. Since she was married on July 28, 1973, she will be able to assert the presumption of parental support for the period between that date and the date of her father's death.

Other than Sue's period of presumed parental support, the only "pecuniary loss" claimed by any of the plaintiff-offspring is "pecuniary loss of prospective inheritance." Plaintiff-offspring admit that no Maryland case has ever held that "prospective inheritance" could be considered as "pecuniary loss" under the Wrongful Death Statute, but they cite some authority from other jurisdictions to the effect that such damages may be considered proper under similar statutes. What is absolutely clear in Maryland, however, is that speculativeness is to be scrupulously avoided in assessing damages under the Maryland Wrongful Death Statute. *E.g., State v. Wooleyhan Transport Co., supra; Elder v. Baltimore & Ohio R. R. Co., supra; Agricultural & Mechanical Assoc. of Washington County v. Maryland,* 71 Md. 86, 102–04, 18 A. 37 (1889). There can be little question that "prospective inheritance" is a matter of great speculativeness. *See, e. g., Baker v. Slack,* 319 Mich. 703, 30 N.W.2d 403, 407 (1948). This Court, therefore, has no doubt whatsoever that the courts of Maryland would not allow "prospective inheritance" to be considered as an item of damages in a wrongful death action.

In view of the foregoing, summary judgment shall be entered, in accordance with the accompanying Order, for defendants against Sue Newton, Judith Carkner, and Gary Alden on all issues of damage except the issue of the parental support of Sue Newton for the period from October 29, 1972 to July 23, 1973.